THE CHEMICAL NATIONAL BANK of New York, Respondent, v. AUGUSTUS W. COLWELL, Impleaded, etc., Appellant.

Under the provision of the act of 1875 (§ 10, chap. 611, Laws of 1875), providing for the incorporation of certain business corporations, which requires that the directors of a corporation organized under it shall, at their election, "and throughout their term of office," be stockholders, whenever, and as soon as, a director parts with all beneficial interest in and control over his stock and causes the officers of the corporation to have knowledge of such fact, by request that a proper transfer be made on the corporate books, the statute operates to divest him of his office, and he ceases to be a director. (BRADLEY, J., dissenting.)

The provision of said act, declaring that no transfer of stock "shall be valid for any purpose whatever," except to render the transferee liable for debts, until it shall have been entered in the stock transfer-book required to be kept by the company, is only for its protection and does not operate to prevent the passing of the entire legal and equitable title in the shares, as between the parties, by the delivery of the certificate with assignment and power of transfer. (BRADLEY, J., dissenting.)

In an action against the alleged directors of such a corporation to recover a debt of the corporation because of failure to file an annual report in January, 1886, as required by the act (§ 18), it appeared that defendant C., in November 5, 1885, assigned and delivered his certificate of stock, which was for eighty shares, to J., the secretary of the company, for the purpose of terminating his connection with the company. J. accepted the assignment, C. asked for the transfer-book, but the company had no such book at that time, and he was told it was not necessary. A few days later, a transfer-book, having been obtained, the assignment was entered therein. J., however, issued a new certificate to himself for only seventy-five shares, and to C., without his knowledge, a certificate for five shares, which J. induced him to accept, but not with any understanding that he should be a director. The debt in question was incurred by the corporation in June, 1886. *Held* (BRADLEY, J., dissenting), that C. ceased to be a stockholder on his assignment of stock, and thereupon ceased to be a director, and so, was not liable.

(Argued February 10, 1892; decided March 22, 1892.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made February 10, 1890, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court.

This action was brought against defendants as directors of the New York Lumber Auction Company (Limited) to recover an indebtedness of the company because of failure on their part to file an annual report.

The material facts are stated in the opinion.

*Edward C. Perkins* for appellant. The plaintiff failed to show that the note in suit was the note of the New York Lumber Auction Company. (Laws of 1875, chap. 611, § 6; *Brady v. Mayor, etc.,* 16 How. Pr. 443; *P. Bank v. S. A. Church,* 109 N. Y. 512, 521; *McCullough v. Moss,* 5 Den. 566, 575;

*Vail* v. *Hamilton,* 85 N. Y. 453; *Henning* v. *U. S. Ins. Co.,* 47 Mo. 425; *S. Bank* v. *G. Bank,* 17 Mass. 1; *People* v. *Bank N. A.,* 75 N. Y. 547.) The note having been discounted by the plaintiff for the personal benefit of Jones, who was the secretary and treasurer and one of the directors of the company, and the bank having notice that Jones stood in this relation to the company, the burden of proof was upon it to show that the note was issued for the benefit of the company, and as such proof was not forthcoming, the plaintiff could not recover. (Story on Part. § 133; *Franklin* v. *McGusty,* 1 Knapp, 274, 301; *U. N. Bank* v. *Underhill,* 102 N. Y. 337, 339; *Gansevort* v. *Williams,* 4 Wend. 147; *Wilson* v. *M. R. Co.,* 6 N. Y. S. R. 234.) The note either had its inception before it was indorsed by Ludington or not until it was discounted by the plaintiff. If the former, then it was ·evidently issued to Jones, who was a trustee, and as Jones could not recover against this appellant because himself liable for the default in filing the report, the plaintiff, who bought with knowledge of Jones' trusteeship, cannot recover. If the latter, then the debt did not exist during Colwell's term of office, and for that reason the plaintiff must fail. (Laws of 1875, chap. 611, § 10; *Briggs* v. *Easterly,* 62 Barb. 61; *Bronson* v. *Dimock,* 4 Hun, 614, 615; *Knox* v. *Baldwin,* 80 N. Y. 610, 611; *Estes* v. *Burr,* 5 J. & S. 1; *McClave* v. *Thompson,* 36 Hun, 365; *Easterly* v. *Barber,* 65 N. Y. 255; *Van Amburg* v. *Baker,* 81 id. 46; *Deming* v. *Puleston,* 55 id. 655; *Reed* v. *Keese,* 60 id. 616; *Vincent* v. *Sunds,* 1 J. & S. 516; *Sanborn* v. *Lefferts,* 58 N. Y. 179; *Sturges* v. *Vanderbilt,* 73 id. 384; *P. & R. Co.* v. *Hotchkiss,* 82 id. 471.) The appellant's resignation on November 4, 1885, was effectual, and from that day·he was no longer a director in the company. (*Squires* v. *Brown,* 22 How. Pr. 35; *Chandler* v. *Hoag,* 2 Hun, 613; *Briggs* v. *Spaulding,* 141 U. S. 152; *Bruce* v. *Platt,* 80 N. Y. 371; *C. Bank* v. *Kortwright,* 22 Wend. 348.) When Colwell surrendered his stock certificate with the transfer on the back indorsed by Jones, and it was accepted by Jones and canceled, he ceased *ipso facto* to

be a director. (*Bruee* v. *Platt*, 80 N. Y. 379; *Bank of Utica* v. *Smalley*, 2 Cow. 770; *Isham* v. *Buckingham*, 49 N. Y. 216; *Robinson* v. *N. Bank*, 95 id. 637; *McNeil* v. *T. N. Bank*, 46 id. 331; *Cutting* v. *Damerel*, 88 id. 410; *Leitch* v. *Wells*, 48 id. 585; *Hoyt's Case*, L. R. [3 Eq.] 286; *Ward's Case*, L. R. [2 Eq.] 226; *Ex parte Henderson*, 19 Beav. 107; *Upton* v. *Burnham*, 3 Biss. 431, 520; Thompson on Stockholders, § 217; *Whitney* v. *Butler*, 118 U. S. 655.) Colwell, having once ceased to be a director, could not be reinstated merely by again becoming a stockholder. (*Blake* v. *Wheeler*, 18 Hun, 496.) In actions of this kind, which are to enforce a penalty, every intendment will be in favor of the defendant, everything must be affirmatively proved, the act will not be extended by construction to support the penalty, and the case made by the plaintiff will be severely scrutinized. (*Garrison* v. *Howe*, 17 N. Y. 458; *Miller* v. *White*, 50 id. 137; *W. A. Co.* v. *Barlow*, 63 id. 62.)

*Charles Jones* for respondent. The exception of the defendant to the reading of the note in evidence was not well taken, and his motion to dismiss the complaint was properly denied. (*Kindberg* v. *Mudgett*, 114 N. Y. 625.) The main defense to the action on which the defendant relied, namely, that he resigned the office of director of the company in November, 1885, is wholly unsupported by the proof. (*Squires* v. *Brown*, 22 How. Pr. 35; *Chandler* v. *Hoag*, 2 Hun, 613; *Blake* v. *Wheeler*, 18 id. 407; *Kindberg* v. *Mudgett*, 114 N. Y. 625; *Adderly* v. *Storm*, 6 Hill, 624; *Worrell* v. *Johnson*, 5 Barb. 210; *Roosvelt* v. *Brown*, 11 N. Y. 148.)

PARKER, J. The debt which lies at the foundation of the judgment under review is alleged by the plaintiff to have been incurred by the "New York Lumber Auction Company (Limited)," a corporation organized pursuant to chapter 611 of the Laws of 1875. The corporation has no money with which to pay the obligation, and the assertion of defendant's liability to respond therefor is based on the default of the corporation in making the annual report required by statute.

The defendant's denial of liability is placed on three grounds:

1. That the note having been made by the corporation payable to its own order, the plaintiff by discounting it for the personal benefit of Jones, a director and secretary and treasurer of the company, became burdened with the necessity of proving that the note was issued for the benefit of the corporation making it, which it failed to do.

2. That the defendant resigned as director November 5, 1885, and before the arrival of the time for making the annual report in respect to which default was made.

3. That before the time came to make the report the defendant had ceased to be a stockholder, and, therefore, by operation of the statute, had ceased to be a director.

As we have reached the conclusion that the last position is well taken and calls for a reversal of the judgment, the other questions will not be considered.

The corporation was created in July, 1885; the annual report omitted should have been made within twenty days after the 1st day of January, 1886, and the note in suit bears date July 2, 1886. The defendant was one of the subscribers to the capital stock of the company, and was elected a director. Subsequently he informed Jones, the secretary and treasurer of the corporation, that he wished to resign all connection with the company, assigning as a reason the duties imposed by the executorship of his father's estate.

After several conversations of the same general character, and on November 5, 1885, he, accompanied by his co-executor, Mr. Milne, went to the office of the company, and met Jones, the secretary and treasurer, and a Mr. Atchison, an employe. The defendant asked for his stock and received a certificate for eighty shares, which he indorsed as follows:

"For value received, I hereby sell, transfer and assign to Latimer E. Jones, eighty shares of stock within mentioned, and authorize L. E. Jones to make the necessary transfer on the books of the company.

"Witness my hand and seal this 5th day of November, 1885.

"In presence of                                A. W. COLWELL.

T. S. Atchison."

After executing this assignment he gave the stock certificates to Jones, at the same time saying : "Now, Jones, that severs all my connection with the Lumber Auction Company ; I have got nothing further to do with it; you have got father's stock, he is dead, and that settles that, and I have given you mine, and that clears up all that, and I have nothing further to do with the company."

Jones accepted the stock and the defendant asked for the transfer-book, but the company did not have one, and he was told that it was not necessary. Some days later a transfer-book was obtained and the stock transferred, but as Jones, at the suggestion of Atchison, issued a new certificate to himself for seventy-five shares, and to the defendant, but without his knowledge, for the remaining five shares, and a few days later induced him to accept it, but not with the understanding that he should be a director, we are led to inquire whether the defendant did not cease to be a stockholder on the fifth of November ?

The importance of that inquiry rests in the requirement of the statute that the directors "at their election, and throughout their term of office shall be stockholders in such corporation, to at least the extent of five shares." If then defendant ceased to be a stockholder in the corporation on November fifth, the statute put an end to his official relation with the company. It should be observed that on the occasion of the assignment of the stock to Jones and his acceptance thereof, it was understood to be an absolute disposition of all the defendant's shares. The subsequent issue of five shares to him was not in pursuance of any understanding had at the time of such assignment and was done at the instance of Atchison, who made out the certificate and suggested to Jones that he persuade Colwell to accept it.

The consideration of the undisputed testimony to which we have referred is not embarrassed by any question as to the good faith of the defendant or the propriety of his action. The corporation was solvent when he sought to terminate his relation with it as a stockholder and director, and the indebted-

ness which induces this controversy was created months afterwards. That he intended to make an effectual transfer of his stock is not questioned; nor is it asserted that he omitted to do anything which the situation permitted to effectuate his purpose. The contention is that he did not accomplish his desire because the transfer was not made on the books of the company that day.

He sought to have that done, but it was not, because the company had failed to provide books for the purpose, as provided by its by-laws. It has been frequently held that such provisions are intended solely for the protection of the corporation; can be waived or asserted at its pleasure; are without effect, except for the protection of the corporation, and do not operate to prevent the passing of the entire title, legal and equitable, in the shares, as between the parties, by the delivery of the certificate, with assignment and power of transfer. (*Isham* v. *Buckingham*, 49 N. Y. 216; *Robinson* v. *National Bank of New Berne*, 95 id. 637; *McNeil* v. *Tenth National Bank*, 46 id. 331; *Leitch* v. *Wells*, 48 id. 585.)

The plaintiff's contention then is reduced to the position that notwithstanding the defendant parted with all title, both legal and equitable, in the shares, he still continued to be a stockholder within the meaning of the statute, because through the neglect of the corporation in providing proper transfer-books, the stock was not formally transferred on its books.

We do not think the statute should receive such a construction. The requirement that a director should have, at his election, and throughout his term of office, at least five shares, manifests that it was the policy of the legislature that the management of the affairs of such corporations should only be committed to those having a personal pecuniary interest in its success or failure, in the conduct of business for which it was created; otherwise the provision is without reason for its support.

It would seem to follow that as soon as a director parts with all beneficial interest in, and control over, the stock which he is required to hold, and causes the officers of the corporation

to have knowledge of such fact by a request that a proper transfer be made on the books of the company, he no longer possesses the qualifications which the statute declares to be essential.

If the defendant had not been elected a director at the first election, and had simply subscribed for eighty shares of stock, it would hardly be contended that after making the disposition of it, which he did on November fifth, that he would have been eligible to the position of director; nor would there have been any excuse for assuming that he was, for even the books of the company did not show an apparent eligibility; there were no transfer-books, and the only evidence there was on that subject, in the possession of the company, showed that the defendant had parted with all interest in and dominion over the stock for which he had subscribed.

For the same reason, the statute executing itself operated to divest him of title to the office which he had ceased to be qualified to hold.

In the cases cited by the respondent, the question presented for our determination was neither before the court nor decided, and as they have received consideration by this court in *Cutting* v. *Damerel* (88 N. Y. 410), they need not be further alluded to in this connection.

The judgment should be reversed.

BRADLEY, J. (dissenting). I do not see my way to concurrence in reversal of the judgment.

The purpose of the defendant to resign his position of director of the N. Y. Lumber Auction Co. (Limited), was not brought to the attention of the board of directors. And his statement made to that effect to Jones, who was the secretary-treasurer of the company, does not seem effectual to accomplish it.

The statute under which the company was incorporated provides that the members of the board of directors at their election, and throughout their term of office, shall be stockholders in such corporation to at least five shares and shall

hold their offices until their *successors* are chosen. (L. 1875, ch. 611, § 10.) In view of that provision of the statute the question arises whether the transfer by a director of his stock operates to terminate his relation as such to the company, and if so whether the defendant did effectually for that purpose transfer his stock prior to the creation of the debt upon which the action is founded.

My attention has been called to no other provision of the statute upon the subject of the eligibility of a person for the place of director. And that does not in terms declare that such relation shall terminate when he ceases to be a stockholder. The defendant was such when elected and the statute provided for his retirement only on the election of his successor. But without further considering that question, the inquiry arises, Did the plaintiff, as between him and the company cease to be a director before such debt was contracted? By reference to the statute it is seen that "no transfer of stock shall be valid for any purpose whatever, except to render the person to whom it shall be transferred liable for the debts of the corporation according to the provisions of the act, until it shall have been entered" in the book referred to "by an entry showing from and to whom transferred." (Id. § 17.) And the by-law of the company provided that transfers of shares should "only be made upon the books of the company" in the manner there directed. The defendant owned eighty shares of the stock, and no more than seventy-five of them were transferred upon the books of the company, and as between him and it, his relation of stockholder of five shares continued. (*Adderly* v. *Storm*, 6 Hill, 624; *Worrall* v. *Judson*, 5 Barb. 210; *Roosevelt* v. *Brown*, 11 N. Y. 148.)

It would seem that the question here is not in the fact whether the defendant had transferred his stock so as to vest title to it in another as between them, but is, what was his relation which the company could treat him as having to it, as it is between him and the corporation that the inquiry would arise whether or not he continued to be one of its directors. And for the purpose of his eligibility he would

properly be treated by the company as a stockholder until his transfer was entered on the book. If that view is sound, he never, as to the company, ceased to have five shares of the stock after he was elected director.

While it is true he made and delivered to Jones the certificate with an assignment upon it covering the eighty shares without consideration, it appears that when the certificate was surrendered and new ones taken the shares were so divided that Jones took seventy-five, and certificate for the other five was issued to the defendant. All inferences of fact legitimately arising from such transaction and bearing in that direction are to be taken in support of the recovery.

These suggestions lead to the conclusion that the judgment should be affirmed.

All concur, with PARKER, J., except BRADLEY, J., dissenting.

Judgment reversed.