FOLLETT, J.
October 16, 1888, the Adams Furniture & Manufacturing Company, Limited, was incorporated under chapter 611 of the Laws of 1875, and the acts amendatory thereof and supplementary thereto, for the purposeof manufacturing and selling furniture, having its office and principal place of business at the village of Adams, N. Y. It started with a capital stock of $20,-000, divided, into shares of $100 each. November 14, 1890, its stock was increased to $30,000, and April 19; 1892, to $40,000, divided into 400 shares of $100 each, at which sum it remained until the corporation became insolvent, in February, 1895. The appellant was a stockholder, a director, and the vice president of the corporation from its organization until December 27, 1893, at which date he held 52£ shares under certificate No. 41, and 20-shares under certificate No 53, December 27, 1893, he sold all his shares (72^-) to John Sinclair, in consideration of one dollar, and assigned and delivered his certificates to the purchaser. September 19, 1894, John Sinclair surrendered the certificates so assigned to him to the corporation, and received a new certificate for the shares. John Sinclair was a stockholder, a director, the secretary, the treasurer, and the general manager of the corporation during its entire existence. The plaintiff is the wife of John Sinclair, and Decmber 21, 1894, she loand to the corporation $5,-530, for which she received its note, payable on demand, with interest, which was signed, “ Adams Furniture.& Manufacturing Oo., Lim., per John Sinclair, Secy, and Treas.” The note was not paid, and March 27, 1895, she duly recovered a judgment thereon in the supreme court for $5,636,91, damages and costs, which was duly docketed in the office of the clerk of the county of Jefferson, in which county the corporation bad its principal office ; and on the same day an execution was issued to the sheriff of that county, who, Macrh 28, 1895, returned it wholly unsatisfied. The directors of the corporation failed to make and file annual reports of its affairs in January of the years 1892, 1893, 1894, and 1895, as required by section 30 of chapter 688 of the Laws of 1892; and March 20,1895, this action was begun against all the directors, to recover the amount of the judgment, because of their failure to make and file such reports. On the triala judgment was recoveree against all the directors for the amount claimed, from which the defendant Harrison Fuller has alono appealed. The foregoing fact are not disputed.
The following is a copy of the material parts of section 30 of chapter 688 of the Laws of 1892, under which it is sought to hold the appelant liable for the debt due the plaintiff:
“Every stock corporation, except moneyed and railroad’corporations, shall annually, during the month of January, * * * make a report as of the first dayjpf January, which shall state : (1) The amount of its capital stock and the proportion actually issued. (2) The amount of its debts or an amount which they *643 do not then exceed. (3) The amount of its assets oran amount which its assets at least equal. * * * If such report is not so made and filed, all the directors of the corporation shall jointly and severally be personally liable for all the debts o£ the corporation then existing, and'for all contracted before such report shall be made.” 2 Rev. St. ( 9th Ed. ) 1013.
This section has remained unchanged since 1892, and a like report was required and the same liability imposed for a failure to file one was provided for by section 18 of chapter 611 of the Laws 1875, as amended by chapter 208 of the Laws of 1881, under which the corporation was organized.
It was held (Quarry Co. v. Bliss, 27 N. Y. 207), that only the directors of a manufacturing corporation who were such when the debt was contracted were liable therefor for failing to comply with the twelfth section of the manufacturing act, which provided that “all the trustees of the company shall be jointly and severally liable for all the debts of the company then existing, and for all that shall be contracted before such report shall be made.” Vincent v. Sands 33 N. Y. Super. Ct. 511, affirmed 58 N. Y. 673 ; Thomp. Corp. §4209. _ '
_ The sole question involved in this case is whether the appellant was a director December 21, 1894, when the plaintiff made the loan which she now seeks to recover. The appellant contended in the court below, and now contends, that he ceased to be a director on the 27th of December, 1893, when he sold and assigned all his shares to John Sinclair ; and that, in any event, he ceased to be a director on the 19th of September, 1894, when John Sinclair surrendered the certificates for such shares. It will be remembered that the debt due the plaintiff was contracted a year, lacking six days, after the appellant assigned his shares, and more than three months after the certificates for the shares formerly held by him were surrendered to the corporation, and a new certificate issued to Sinclair. In support of the position that he had ceased to be a director, the appellant cites the twentieth section of chapter 688 of the Laws of 1892 (Stock Corporation Law), which provides that, “ if a director shall cease to be a shareholder, his office shall be vacant." In Bank v. Colwell, 132 N. Y. 250, 30 N. E. 644, which case arose under the act under which this corporation was organized, it was held that,, when a director ceased to be a shareholder, his directorship was at an end, ana he was not liable for subsequently incurred debts of the corporation.
In answer to the appellant’s position, the respondent insists that the appellant remained a director of the corporation until it became insolvent, because, as she asserts, the transfer of the appellant’s shares to John Sinclair was absolutely void, under section 48 of the stock corporation law, which provides :
“ Sec. 48 Prohibited Transfers to Officers or Stockholders. FTo corporation which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its pro- *644 petty to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. Fo conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. Every person receiving by means of any such prohibited act or deed any property of the corporation shall be bound to account therefor to its creditors or stockholders or other trustees. No stockholder of any such corporation shall make any transfer or assignment of his slock therein to any person in contemplation of its insolvency. Every transfer or assignment or other act done in violation of the foregoing provisions oj this section shall he void. * * * Every director or officer of a corporation who shall violate or be concerned in violating any provision of this section, shall be personally liable to the creditors and stockholders of the corporation of which he shall be director or an officer to the full extent of any loss they may respectively sustain by such violation.”
The italicized paragraph is new, first becoming a part of the statutes of this state in 1890 (section 48, c. 564, Laws 1890), and was amplified and enacted as above given by chapter 688 of the Laws of 1892. It is urged by the learned counsel for the appellant that the italicized paragraph of the above section has no application to this case, because it does not appear that at the time of the transfer the corporation had failed to pay any of its notes or obligations, and that the term “ such corporation ” does not embrace stock corporations generally, but only those which have failed to pay their legal obligations. The second paragraph of the section forbids “such corporations ” to make preferential assignments or transfers of its property, and the term “such corporation ” as there used embraces all insolvent stock corporations, whether they have or have not failed to pay their obligations. Harris v. Thompson, 12 Barb. 62, arose over the validity of a general assignment for the benefit of creditors, without preferences, executed by a manufacturing corporation. It was conceded that the assignment was made in contemplation of insolvency, and that the corporation had not “ refused the payment of any of its notes or other evidences of debts.” It was contended on the part of those contesting the validity of the assignment that it was void, under section 4, tit. 4, art. 2, c. 18, pt. 1, Rev. St., which provided:
“ Sec. 4. Whenever any incoroorated company shall have refused the payment of any of its notes, or other evidences of debt-in specie, or lawful money of the United States, it shall not be lawful for such company, or any of its officers, to assign or transfer any of its property or choses in action of such company, to any officer or stockholder of such company, directly or indirectly for *645 the payment of any debt; and it shall not be lawful to malee any transfer or assignment in contemplation of the insolvency of such company, to any person or persons whatever; and every such transfer or assignment to such officer, stockholder or other person, or in trust for them or their benefit, shall be utterly void. * * *”
It was contended in behalf of the corporation that the term “such company,” in the last paragraph above quoted, referred to one which had refused the payment of its notes or other evidences of debt, and did not embrace corporations generally; but it was held that the .second clause was not confined in its application to assignments by corporations which had refused the payment of any of their notes or other evidences of debt, but that it applied to all corporations makinS assignments in contemplation of insolvency. This case was cited and approved in Robinson v. Batik, 21 N. Y. 406, and in Sibell v. Remsen, 33 id. 95; Burrill, Assignm. (5th ed.) § 65. It sometimes happens that a term is used in a different sense in different paragraphs of a section of a statute, but not often, - and it will not be presumed that it was so used unless it clearly appears that such was the intention of the legislature.
I am of the opinion that a transfer by a shareholder of his shares in a corporation in contemplatian of its insolvency is within the italicized paragraph, and void as to persons injured thereby. But the question arises, void as to whom? Certainly not, in the absence of fraud, as between the transferror and the transforree, nor as against the corporation assenting to the transfer. The purpose of the paragraph is to prevent solvent shareholders from escaping their statutory liability to those who are creditors of corporations when the transfers are made, and their contractual liability to corporations not assenting to the transfer. There is no statute or rule of laws which prevents a director from resigning his office at any time; and if he does so, not covertly, but openly, he ceases to be liable to the future creditors of the corporation for the omission of the directors to make and file thereafter annual reports. The paragraph of the section under consideration, literally construed, would avoid a sale .of shares made by a stockholder at par to a responsible purchaser, if at the time it was made the vendor believed that the corporation was insolvent and would ultimately fail.
It is urged that the trial court has found that the appellant believed December 27, 1893, when he assigned these shares, that the corporation was then embarrassed and must ultimately fail, and that he made it for the purpose of relieving himself of future liability as a director. I think these facts were well found. But I am of the opinion that if a director assigns his shares to another, with or without consideration, and a new certificate is issued to the transferee, the transferror ceases to be a director, even though he asserts at the time of the transfer that he believes the corporation to be insolvent and will ultimately fail. If such a transfer be made, without reference to any particular liability thereafter to be incurred, and without retaining any interest in the shares, the transferror ceases to be a director, and is not liable for the subsequently innurred debts of the corporation. I am speaking of a case in *646 which the transfer of shares is absolute, the transferror retaining no interest in them, and there being no understanding that they are held for his benefit, or are ever to be restored to him. In the case at bar it is not pretended that the transfer was not an absolute one. The transfevree is the husband of the plaintiff, and was the ' witness called to make out her case, and there is no hint in his testimony that the appellant retained any interest in or control over the shares which were assigned in trust, or that the appellant re-, tained any legal or equitable interest in them.
The shares held by the appellant were Fully paid up shares, and, indeed, it is not asserted that all the stock of this corporation had not been paid in full. It is undoubtedly the rule that in case a shareholder, in contemplation of the insolvency of a corporation in respect to which he is under some liability as a shareholder, under section 54 of the stock corporation law, or as in the case of national and state banks, or in case his stock has not been fully paid for, assigns his shares toan irresponsible, person, for the purpose of escaping liability, he remains liable to the then-existing creditors of the corporation. Many cases 'may be cited in support of this proposition, of which the following are types: Nathan v. Whitlock, 3 Edw. Ch. 215, affirmed 9 Paige, 151; Davis v. Stevens, 17 Blatchf. 259, Fed. Cas. No. 3,653; Bank v. Magill, 5 Conn. 28; Bowden v. Johnson, 107 U. S. 251, 2 Sup. Ct. 246. But in none of the cases cited or found is it held that in case fully paid up shares in a corporation engaged in carrying on its business—“a going concern ”—are transferred out and out, by a duly registered' sale, to an irresponsible person, the transferror is liable to the future creditors of the corporation. The rule is otherwise when' the transfer is merely colorable with a secret trust attached in favor., of the transferror. Cook, Stock & S. (3d ed.) 263 et seq., and cases cited. It is not the rule that a person once a stockholder in' an1 unsuccessful corporation is always a stockholder. Corporations actually insolvent, like individuals who are insolvent, are often able to conceal their real condition, and to continue business for years. If a registered sale of shares by a holder believing the corporation to be solvent is void under the statute as to a creditor whose debt arises three months after the sale, I see no reason why . a registered sale would not be void as to creditors whose debts ac-, crued three or more years after such sale. . :
By the fifty-fourth section of the stock corporation law it is provided :
“The stockholders of every stock corporation shall jointly and severally be personally liable to its creditors to an amount equal to the amount of the stock held by them respectively for every debt of the corporation, until the whole amount of its capital stock issued and outstanding at the time such debt was incurred shall have been fully paid. The stockholders of every stock corporation shall jointly and severally be personally liable for all debts due and owing to any of its laborers, servants or employes other than contractors for services performed by them for snch ©orpora,tion.” 2 Rev. St. (9th ed.) 1025. i
*647 Suppose a stockholder in an insolvent corporation, the stock of ■which has been fully paid in “in contemplation of its insolvency,’’ gives his shares to a man of straw and the transfer is duly registered, and the corporation continues in business, and pays every debt existing at the date of transfer, and subsequently incurs debts to laborers; could it be successfully contended that the transfer would be void as to laborers subsequently employed, and that the transferrer would be liable for such debts ? It seems to me not. Fully paid up shaves are transferable, and the holder of such shares (though he be a director), who has lost faith in the management and future success of a corporation which is engaged in business, may sell them to whosoever will buy, and for such a price as he can get; and, if the transfer is absolute and registered, he ceases to be a director, and is not liable to the future creditors of the corporation, and the transfer is not void as to them. 3 Thomp. Corp. § 3235 et seq.; Thomp. Liab. Stockh. § 210 et seq.; Cook, Stock & S. (3d ed.) § 254 et seq.; Mor. Priv. Corp. (2d ed.) § 166; Lindl. Partn. (3d ed.) 721, 1431, et seq.
But on another ground we think this plaintiff was not entitled to recover. She was not defrauded by the transfer. She was pr. s nt when her husband took the assignment of the certificates, knew the consideration paid, and took part in the conversation. Her loan to the corporation, made through her husband, was with full knowledge that the appellant had transferred all his shares to her husband, and was made more than three months after the tae transfer had been entered on the books of the corporation, and a certificate for the shares issued to the transferee.
The judgment should be reversed, and a new trial granted, with •costs to abide the event '
All concur.