THOMAS CUPIT, PLAINTIFF AND APPELLANT, *v.* THE PARK CITY BANK, A CORPORATION, AND DAVID C. McLAUGHLIN, RECEIVER, DEFENDANTS AND RESPONDENTS.

VACANCY IN OFFICE—BY OPERATION OF LAW—BANK DIRECTOR— TERMINATION OF AUTHORITY — SEC. 2515 C. L. U. 1888 SELF EXECUTING—EFFECT OF DISABILITY CREATED BY OPERATION OF LAW —DISQUALIFIED PERSON CAN BE MADE NEITHER DE JURE NOR DE FACTO OFFICER — QUO WARRANTO'— WHEN WRIT WILL NOT ISSUE—ACTS OF DISQUALIFIED OFFICER—CANNOT BE QUESTIONED BY CORPORATION—MAY BE BY THIRD PERSON—INHERENT POWER OF OFFICER OF CORPORATION—DOES NOT EXTEND TO GENERAL ASSIGNMENT — POWER OF BOARD OF DIRECTORS — MEETING OF BOARD OF DIRECTORS WITHOUT DUE NOTICE—ATTEMPT TO RATIFY UNAUTHORIZED ACT OF OFFICER—EFFECT OF.

*Vacancy in Office—By Operation Of Law — Bank Director—Termination of Authority—Sec. 2515 C. L. U. 1888 Self Executing.*

Sec. 2515 C. L. U. 1888 is self executing and from the time the first loan 'by way of overdraft unsecured, was made by the bank to the partnership, of which R., the cashier and a director of the bank, was a member, his office as cashier and director became vacant and from that time until the bank failed he had no authority to act for the corporation.

*Effect of Disability Created by Operation of Law — Disqualified Person can be made neither De Jure nor De Facto Officer.*

The office of R. as cashier and director having become vacant by operation of law by reason of his indebtedness to the bank, it was beyond the power of the corporation, either by direct or indirect means, to make of him a *de jure* or a *de facto* officer so long as the disability continued.

*Quo Warranto—When Writ will not Issue.*

The writ of *quo warranto* will not issue and cannot be invoked for the purpose of determining merely a private right, in which the public is not interested.

*Acts of Disqualified Officer—Cannot be Questioned by Corporation—May be by Third Person.*

Although a corporation, having permitted one no longer an officer to remain in control of the management of its affairs, cannot be heard to deny the validity of his acts, a different rule governs where those acts are challenged at the first opportunity by innocent third persons who have been damaged thereby.

*Inherent Power of Officer of Corporation—Does not Extend to General Assignment—Powers of Board of Directors.*

An officer of a corporation has no inherent power, by reason of his office, to make a general assignment of the property of the corporation. Such power rests only in the board of directors duly assembled.

*Meeting of Board of Directors Without due Notice—Attempt to Ratify Unauthorized Act of Officer—Effect of.*

A meeting of the board of directors, of a banking corporation, held without notice to one member of the board and at which meeting there was not a quorum of qualified directors present, cannot ratify an unauthorized act of one of the officers of the corporation.

(Decided Oct. 2, 1899.)

Appeal from the Third District Court, Summit County, Hon. A. G. Norrell, *Judge.*

Creditors' bill by plaintiff to set aside and adjudge to be

void as to plaintiff a general assignment made by the Park City bank for the benefit of its creditors and to declare a certain judgment held by plaintiff against the bank to be a first lien upon certain real property included in the assignment. From a judgment for defendants, plaintiff appeals. *Reversed.*

*W. I. Snyder, Esq.,* and *Messrs. Varian & Varian,* for appellant.

There is no authority vested in a president, vice president, or cashier of a banking corporation, to make an assignment for benefit of creditors. Beach Corp., Vol. I, Sec. 206; Morse Banks, Vol. I, 3d ed., Sec. 143, *et seq.* Morse, Vol. I, Sec. 144, p. 294. Morse Banks, Sec. 152.

A. B. Richardson was neither vice president, cashier, nor director when the alleged assignment was made.

He was not vice president, because there was no election. He was no longer cashier or director, because his offices were vacated under and by operation of the law.

The statute is imperative in its terms: Sec. 2515, C. L. U. 1888.

The statute is mandatory. Its language is prohibitory and negative. Sutherland Statutory Const., Secs. 203, 446, 447. *Bladen* v. *Philadelphia,* 60 Pa. St. 464.

The statute executes itself, and upon the existence of the prescribed conditions the office becomes vacant. *Chem. N. Bank* v. *Colwell,* 130 N. Y.—, 30 N. E. 644–646; *Bartholomew* v. *Bentley,* 1 O. St. 42.

As a partner with J. M. Richardson, the cashier was liable to the bank for the whole amount of overdraft. *First Nat. Bank* v. *Reed,* 36 Mich. 263.

The alleged ratification was void, and gave no life to the assignment.

The statute and articles expressly required a vacancy in

the board to be filled by the remaining directors.    (C. L., Vol. II, Sec. 2510.)    Beach on Corp., 1 Ed., Sec. 225; *Faure Elec. Accumulator Co. v. Phillipart*, 4 Ry. & Corp. L. J. 319; *State, ex rel., Cory v. Curtis*, 9 Nev. 334; *Moses v. Tompkins*, 4 So. (Ala.) 763; *Walsenberg W. Co. v. Moore*, 38 Pac. 60; *Ins. Co. v. Westcott*, 14 Gray ·440; *Doernbecher v. Col. Lumber Co.*, 28 Pac. (Ore.) 899; *Despatch Co. v. Bellamy*, 12 N. H. 205; 37 Am. Dec. 203; Thompson on Corp., Secs. 3905–3913–3919 –3932; *Wickersham v. Crittenden*, 93 Cal. 25–31.

In this last case it is held  that a director who resigned, "was as devoid of authority to form a component part of the board as would have been *any other bystander.*"

A ratification must have been had by competent authority, *i. e.*, at least a quorum of the directors called together, with *notice* to the others.    *Singer v. Copper Co.*, 53 Pac. (Utah) 1028.    *Simon v. Sevier Co.*, 14 S. W. 1101.    *Bank v. Asheville Co.* 21 S. E. 949.    *Smith v. Dorn*, 30 Pac. 1026.

This singular attempt to validate the action of a board of the directors of a corporation, by evidence of the opinions, intents and state of mind of a member who was not present, seems to have been approved by the court below. Evidently it weighed with the judicial mind in arriving at a decision.    At least, we must assume that it did.    The admission of this evidence was palpable and gross error. Cook on Stockholders, 3d Ed., Sec. 713a, p. 1063.    *Sanderson v. Tinkham*, 49 N. W. 1034; *Columbia Bank v. Church*, 127 N. Y. 361; *Duke v. Markham*, 10 S. E. 1017; *Elliot v. Abbot*, 12 N. H. 549.    *D'Arcy v. Tamar Ry. L. R.*, 2 Ex. 158; *Singer v. Copper Co.*, 53 Pac. 1024.

There is a distinction between officers of a private corporation, and public officers.    Morawetz Corp., Sec. 640; *Norton v. Shelby County*, 118 U. S. 441.

As to officers of private corporations, to constitute directors *de facto*, there must be the color of election, or exercise of the functions of the office, under such circumstances, and for such length of time, without interference, as to justify the presumption of a legal election. Beach on Corporations, Sec. 233; Beach on Railways, Sec. 496.

*De facto* directors must be acting and *generally recognized* as such. Field on Corporations, 180.

*Messrs. Brown & Henderson*, for respondents.

Counsel contends that this assignment was void. If so there is ample and adequate remedy at law. All Mr. Cupit had to do was to sell this property and bring the action of ejectment. *Crooke* v. *Andrews*, 40 N. Y. 549; *Cox* v. *Clift*, 2 N. Y. 118; *Briggs* v. *Johnson*, 7 Me. 235; *Cohen* v. *Sharp*, 44 Cal. 29.

There is no distinction between the officer of a private corporation and the officer of a public corporation. Thompson, Section 3893.

"The acts of those who publicly exercise the function of directors and other officers of private corporations, are upheld on the same principle which upholds the acts of *de facto* public officers and *de facto* officers of corporations." 3 Thompson, Sec. 3895; Mechem on Officers, Sec. 318; *San Jose Sav. Bank* v. *Sierra Lum. Co.*, 63 Cal. 179.

Where a director ceased to be a stockholder, that is became ineligible but continued to act, his acts were valid as to third persons. *Despatch Line* v. *Bellamy Mfg. Co.*, 12 N. H. 205; *Delaware & Hudson Can. Co.* v. *Penn. Coal Co.*, 21 Penn. St. 131.

It is contended that this is not a collateral but direct attack. To determine that question, let us see what it is

an attack upon. It is not any attack upon any fraud in the assignment or any invalidity on its face; it is an attack by oral evidence upon the officers who executed it. Plaintiff says that they were not the officers they claimed to be, and he seeks to show it in this action wherein Cupit is plaintiff and the Bank and McLaughlin defendants, and wherein neither Gregor or Richardson are parties at all. We say that the only direct attack on those officers would be in proceedings in the nature of a *quo warranto* wherein the said officers could be made defendants in person.

Counsel quotes from Van Fleet on collateral attack upon judgments; this is a collateral attack on officers; however, the analogy is the same if we follow it rightly, but when Van Fleet used the expression, "In manner not provided by law," he does not mean that a collateral attack is an unlawful one; what he means, is in some manner not provided by the law of review; a direct attack upon a judgment is by appeal or writ of error, or motion in the cause to set aside the proceedings; a bill in equity to set aside a judgment, is a collateral attack. 1 Black on Judgments, Sec. 253: *Hanley* v. *Hanley,* 114 Cal. 690; Van Fleet on Col. Attack, Secs. 5 to 11.

### STATEMENT.

This is a creditor's suit, brought by plaintiff, appellant, to set aside and adjudge to be void, as to plaintiff a general assignment made by the Park City Bank for the benefit of its creditors, and to declare a certain judgment held by plaintiff against the bank to be a first lien upon certain real property included in the assignment.

The material facts in the case as shown by the record are as follows:

On the 30th day of June, 1890, the Park City Bank, one of the defendants herein, was incorporated under the

banking laws of Utah Territory, with a capital stock of $50,000, divided into five hundred shares of $100 each, and with its place of business at Park City Utah. The stockholders were:

W. B. Dodridge, of St. Louis, Mo., holding 163 shares.
C. E. Wurtele, of Evanston, Wyo., holding 163 shares.
A. B. Richardson, Park City, Utah, holding 163 shares.
Thomas Cahoon, of Ogden, Utah, holding 5 shares.
R. C. Gunn, of Park City, Utah, holding 5 shares.
W. E. Richardson, Park City, Utah, holding 1 share.

The first five mentioned were made directors and officers as follows: C. E. Wurtele, president; W. B. Dodridge, vice-president; A. B. Richardson, cashier, and R. C. Gunn, secretary. The articles of incorporation among other things, provided for the election of a board of directors at an annual meeting to be held at Park City, Utah, on the 20th day of July, of each year.

The president, vice-president, cashier, and all other officers to be appointed by the board of directors and to pe removed at pleasure.

The board of directors to define and prescribe the duties of the officers, dismiss and appoint others to fill vacancies. The officers to perform such duties as by common usage pertain to their positions and such as are provided by law. The majority of the board of directors to constitute a quorum, and be fully authorized to transact business.

The officers first installed were re-elected from time to time and continued to serve as such until May 17, 1893. A short time prior to this date, W. B. Dodridge, who was a director and a vice president, wrote to A. B. Richardson, a director and the cashier, tendering his resignation, as vice president, and requesting Richardson to call a special meeting of the board of directors for the purpose of accepting his resignation and filling the vacancy caused thereby.

In pursuance of this request a meeting of the board of directors was called for May 17, 1893, and attended by Thomas Cahoon, R. C. Gunn, and A. B. Richardson, cashier. The other two directors, Dodridge and Wurtele, being non-residents, and at the time outside of the Territory, were not in attendance. At this meeting the following proceedings were had as shown by the minute book of the bank: "Richardson presented the resignation of Dodridge as vice president; accepted. Cahoon tendered resignation as director; unanimously accepted. Moved by Cahoon, and seconded by Gunn, that G. D. Gregor be elected a director to fill the vacancy of Thomas Cahoon, resigned; carried. Adjourned. R. C. Gunn, Secretary."

On the following day, (May 18,) there was another meeting and the following proceedings were had as shown by the minute book of the bank: "Present, A. B. Richardson, G. D. Gregor and R. C. Gunn. Richardson elected vice-president; Gunn elected cashier to fill the vacancy. Adjourned."

In the meantime the bank became insolvent, and on June 12, 1893, A. B. Richardson, acting for the bank, and as its vice-president, but without the authority or knowledge of the board of directors, made a general assignment, to Edwin Kimball, as assignee, of all property owned by the bank, for the benefit of its creditors. The assignee immediately qualified, took possession and assumed control of all property belonging to the bank, including the property involved in this action, and began to reduce the assets to cash for the purpose of winding up the affairs of the bank. On October 13, 1893, Edwin Kimball, the assignee, died, and D. C. McLaughlin was appointed receiver in a suit brought by one of the creditors, for the benefit of all creditors of the bank. The receiver qualified, and proceeded with the winding up of the affairs

of the bank. At the time of the assignment, and for several months prior thereto, A. B. Richardson was indebted to the bank jointly with one Jerry M. Richardson, on an overdraft for more than $10,000.00, for which no security was given.

On June 16, 1893, four days after the assignment was made, a special meeting of the board was held pursuant to call and the following proceedings were had as shown by the minute book of the bank: "Present, A. B. Richardson, G. D. Gregor and R. C. Gunn. Moved by Gunn, seconded by Gregor, that the action of vice-president Richardson, in making the assignment and appointing E. Kimball, as assignee, is hereby ratified. Carried. Adjourned. R. C. Gunn, Secretary."

The record affirmatively shows that W. B. Dodridge had no notice of either of the meetings referred to, but is silent as to C. E. Wurtele, the other non-resident director.

On July 12th, 1893, just one month after the assignment was made, Thomas Cupit, plaintiff herein, commenced an action in the district court against the bank to recover $5,921.11, two thousand dollars of which, was a deposit made by Cupit in the bank seven days before the assignment, and when it was known to Richardson and those in the immediate control of the bank that the corporation was insolvent.

Cupit sued out a writ of attachment, which was duly levied upon certain real estate that belonged to the bank, consisting of the bank building and the ground upon which the building stood. He prosecuted his suit through the various courts to final judgment. *Cupit* v. *Bank*, 10 Utah 294; *Id.* 11 Utah 427. He had execution issued and levied upon the property attached and advertised it for sale. On August 20, 1896, McLaughlin, as receiver, brought suit against Cupit and the sheriff who served the

execution and procured a restraining order against the sale pending the suit.   On February 23d, 1897, Cupit commenced an action similar to the one at bar, in the district court of Salt Lake county.   The case was transferred to Summit county for trial and subsequently dismissed for want of jurisdiction on authority of *Konold* v. *R. R. Co.*, 16 Utah 151.   On November 15th, 1897, plaintiff for himself and for the benefit of all of the other creditors of the bank, who might choose to come in and be made parties, brought this action, and after setting out in his petition most of the foregoing facts, asked that the assignment be declared void as to the plaintiff herein and all other creditors who might choose to come in and be made parties, and that the property levied upon be discharged from the receivership, and that it be decreed subject to the lien of plaintiff's judgment entered in the former suit above mentioned.   None of the other creditors joined in the action; hence Cupit prosecuted it alone.   The plaintiff does not claim any other property, nor does his bill attempt to invalidate any of the proceedings had relative to the property of the insolvent, nor the distribution made to its creditors.

The ninth finding of the trial court, and the only one which we deem it necessary to consider, is as follows:

''That at the time the said Richardson executed the said assignment for and in behalf of the said bank to the said Edwin Kimball, assignee, he, the said Richardson, was not indebted to the bank in the sum of $10,000.00, and was vice-president of the said bank and authorized to act for it.'' The other issues were also found in favor of the defendant and plaintiff's petition was dismissed.   Plaintiff appeals.

McCARTY, *District Judge*, after stating the facts, delivered the opinion of the court:

The grounds upon which appellant relies for reversal of the judgment of the trial court may be summarized as follows: (a) That the assignment is void because made without authority, and never ratified by authority. (b) That Richardson had no authority to make the assignment, because such act did not by common usage pertain to his position, and because at the time his office was vacant by reason of his indebtedness to the bank. (c) That the election of Gregor as director by Richardson, Gunn and Cahoon was void. (d) That the alleged ratification of the assignment of June 16, was invalid because neither Gregor nor Richardson were directors, and were not even *de facto* officers. (e) That the meetings of May 17th and 18th, and of June 16th, were called meetings and notice was not given to the absent directors. (f) That the findings are unsupported by the evidence.

The undisputed evidence, as shown by the record, is, that in 1890, Jerry M. Richardson obtained from the Cresent Mining Company a lease on certain mining property. On the 10th day of November, 1891, by an instrument in writing, he assigned an interest in the lease to A. B. Richardson, one of the bank directors, and they continued to act together under the lease until the bank failed. On this point J. M. Richardson, testified as follows: "After the assignment of a portion of the lease to A. B. Richardson, myself and Richardson continued to act under the lease and assignment until the bank closed its doors. I did the active managing work. A. B. Richardson was in the bank. We did the money and financial business at the Park City Bank. It was done by drawing checks on the Park City Bank, signed J. M. Richardson. * * *

"Q. How was it you came to draw checks in your own name instead of Richardson & Richardson, or Jerry and A. B. Richardson?

*A.* I don't know the reason why, only I had been accustomed to draw checks as J. M. Richardson previous to the partnership and there was nothing said about altering it. My checks were honored at the bank. &ast; &ast; &ast;

Another witness testified, that A. B. Richardson in speaking of the lease to him, stated: "I own one-third of that lease and am going to make some money out of it." There was other evidence introduced showing his relationship with Jerry M. Richardson, and that he owned an interest in the lease mentioned. At the time the bank failed there was an overdraft at the bank in the name of J. M. Richardson of $38,151.97, all of which was on the lease account, and for which A. B. Richardson was personally liable, except $6,115.00, of the amount, which was incurred by J. M. Richardson before A. B. Richardson became interested in the lease. *First Nat. Bank* v. *Reed*, 36 Mich. 203.

This overdraft at stated intervals, as shown by the books of the bank, stood as follows:

| | |
|---|---|
| October, 1892, | $10,200 00 |
| November 30, 1892, | 13,586 26 |
| December 31, 1892, | 15,788 16 |
| January 31, 1893, | 18,297 95 |
| June 8, 1893, | 38,150 97 |

The evidence shows that on the last mentioned date, J. M. Richardson, at the request of A. B. Richardson, gave a note in favor of the bank for $38,150.97, signed "J. M. Richardson, Crescent, leaser." A. B. Richardson remarking at the time: "It don't make any difference, I favored you; it's only a matter of personal favor, it don't amount to anything. The bank commissioner will be along in a few days, and I want to straighten up my accounts."

We think the evidence conclusively shows that A. B.

Richardson at the time the assignment was made, and for months prior thereto, was indebted to the bank, in a sum in excess of $10,000, hence the ninth finding of the trial court, above set out is erroneous. Section 2515, C. L. of Utah, 1888, provides as follows: "No officer of any bank or savings institution organized under this law, shall borrow money from such bank or savings institution unless he furnish security in at least double the amount of the loan made, and no loan by any officer of said institutions shall be made for a period of over three months; * * * nor shall any officer of such banking association become an endorser or security for loans to others. The office of any director or officer who acts in contravention to the provisions of this section immediately thereupon becomes vacant, and any loan he shall have made in contravention of the provisions of this section shall be immediately due and payable, and the bank shall take immediate steps to collect the same."

As stated by counsel for appellant in their brief, "If we *. * * look beyond the language of the statute, we at once ascertain the intention of the legislature. To permit officers of a banking corporation who are entrusted with the power to loan at will the monies deposited by the public for safe-keeping, to themselves, is to open wide the doors to fraud and embezzlement." And the experience of the past has shown that whenever the officers of a banking institution take advantage, which is too often the case, of the opportunities thus afforded them to use without restriction for their own private uses, the funds entrusted to their care, it almost invariably results in the wreck and ruin of the institution itself.

The legislature, in order to guard against such disastrous results, and to create confidence in and give stability to our banking system, has by the enactment of the fore-

going statute undertaken to control and regulate the question. The statute is mandatory and its language plain and imperative. It limits the amount of any loan to a bank officer to $10,000, and in every case requires security in double the amount of the loan made. And it further provides that no such loan shall be made for a period of over three months. A violation of either of the foregoing provisions by an officer or director of a bank renders the office of such director or officer immediately vacant.

Over $30,000.00 of the loan represented by the overdraft above mentioned, was for money borrowed in contravention of the foregoing statute. The statute being self executing, the office of A. B. Richardson, as director and cashier, was rendered vacant at the time the first money was obtained on the overdraft for the use of the partnership of which he was a member, and from that time until the bank failed he had no authority to act for the corporation. *Chem. Nat. Bank* v. *Colwell*, 132 N. Y. 250; *Bartholomew* v. *Bently*, 1 Ohio St. 42.

Counsel for respondent contend that even if it be true that Richardson became indebted to the bank in violation of the foregoing provisions of the statute, and the evidence conclusively shows such to be the case, the proprietors of the corporation having permitted him to remain in the bank and in control of the business, he became and was an officer *de facto*; therefore, the validity of his acts cannot be raised in this kind of an action. And they further contend that the only process by which Richardson's right to act for the bank can be raised is by *quo warranto* proceedings. We think the position taken by counsel is untenable. To hold otherwise would permit officers of a banking corporation, by means of their failure to perform the duties required of them by law, to thwart and render

20 Utah—20.

nugatory the mandatory provisions of the statutes, and to evade the consequences and penalties prescribed for the violation thereof.

Richardson's office as director having become vacant by operation of law, it was beyond the power of the corporation, either by direct or indirect means, to make of him a *de jure* or a *de facto* officer so long as his disability continued by reason of his indebtedness to the bank. When he began using the funds of the bank for speculative purposes and to carry on enterprises in which he was personally interested, it became the duty of the bank, acting through its officers, to take immediate steps, not only to take the management of the bank out of the hands of one who was thus in direct violation of law wrecklessly depleting its vaults, but to proceed to collect the money already borrowed and represented by the overdraft referred to. The neglect and failure of the officers of the bank to perform their duty in this respect ought not to prejudice the plaintiff and estop him from denying the authority of Richardson to act for the bank in making the assignment. Especially so in view of the fact that at the time plaintiff made his last deposit of two thousand dollars, Richardson acting for the bank and as its vice president, fraudulently accepted the money knowing the bank, at the time, to be insolvent.

If, as claimed by counsel for respondents, a proceeding in *quo warranto* is the only process by which the validity of Richardson's acts, and the question of his authority to act for the bank in making the assignment, can be determined, then plaintiff is without a remedy. Before plaintiff discovered that the bank was insolvent and that he had been defrauded of his money, Richardson had made the assignment in question, and turned the entire management of the bank over into the hands of the assignee, and

he, Richardson, no longer had or claimed to have anything whatever to do with its affairs. Under these circumstances, on an examination into the purpose and object of the writ, and the conditions under which it will issue, it becomes evident, that it would not have furnished plaintiff any relief whatever. It is well settled by abundant authority that the writ will not issue and cannot be invoked for the purpose of determining merely a private right, in which the public is not interested. Spelling, Extra. Relief, Sec. 1773 and cases cited; High, Extra. Rem. Sec. 620.

Assuming that, in theory, Richardson is still exercising the functions of a director and officer of the bank, it must be conceded that proceedings in *quo warranto* would succeed only in ousting him from the office; and plaintiff would still be left to his remedy at law for redress.

When plaintiff discovered that he had been victimized by the bank acting through its officers with Richardson at the head and in control of its management, he immediately commenced suit and sued out a writ of attachment and seized the property in question; thereby pursuing the only speedy and adequate remedy provided by law in such cases. Comp. Laws 1888, Sec. 3308.

The corporation having suffered Richardson to remain in control of the management of the affairs of the bank and having profited by his unlawful acts, of course would not be permitted to deny the validity of the transactions entered into by him in the name of the bank on the ground that his office has become vacant by operation of law; a different rule, however, governs when such acts or transactions are challenged by innocent third parties who may have been damaged thereby and who, after discovery of the fraud practiced on them, have not expressly or impliedly by any act of theirs affirmed what has been done.

The rule is well settled by the great weight of authority that an officer of a corporation has no inherent power by reason of his office, to make a general assignment of the property of the corporation for which he assumes to act, unless such power is specially conferred on him by the corporation acting through its board of directors duly assembled. It therefore, necessarily follows that Richardson had no power to make the assignment under consideration, being at the time neither a director nor an officer of the corporation. The record affirmatively shows that what he did in the premises was on his own responsibility, and without the knowledge or consent of the officers and directors of the bank. This brings us to the only remaining question for our consideration in this case, viz.: Was the ratification of June 16, 1893, such as to make the act of Richardson in making the assignment, the act of the corporation? In order to decide this question, we must first determine whether the ratification was made at a meeting of the board of directors duly assembled, at which a quorum of the directors was present.

The meetings of May 17, and 18, 1893, were pursuant to call, and no notice of either of these meetings was given to Dodridge, one of the directors. At the first of these meetings only Richardson, Cahoon, and Gunn were in attendance. As we have observed, Richardson, by reason of his indebtedness to the bank, was not an officer or director, leaving the meeting without a quorum. At this meeting Cahoon resigned as director, thereby leaving only one director present. Notwithstanding this, however, one Gregor was installed to succeed Cahoon as director. At the meeting of May 18, 1893, Richardson, Gunn and Gregor, only were in attendance. Richardson, as above stated, had been removed from office by operation of law and could not act, and Gregor having been installed at a

meeting attended by one director only, who was competent to vote, had no authority to act for the corporation. At this meeting, which was without a quorum, Richardson was installed as vice president and Gunn as cashier. The same condition of affairs existed at the meeting of June 16, 1893, when Richardson, Gunn and Gregor attempted, by resolution, to ratify the unauthorized act of Richardson in making the assignment. No notice of the meeting having been given to director Dodridge, and there being less than a quorum of directors in attendance, it is plain that they were not lawfully assembled as a board, therefore the attempted ratification was not the act of the corporation. *Simon* v. *Sevier Asso.*, 54 Ark. 58; *Smith* v. *Dorn*, 30 Pac. 1024; *Ogden* v. *Murray*, 39 N. Y. 207; *Baldwin* v. *Campbell*, 26 Minn. 43; *Harrington* v. *Liston*, 47 Ia. 11; *S. & G. Turnpike Road Co.* v. *Graber*, 45 Pa. St. 386; 1 Morawetz Priv. Corp. 531–2; 2 Cook, Corp. Sec. 713 a. (Fourth ed.); 3 Thomp. Corp. Sec. 3905; 7 Thomp. Corp. Sec. 84–86; *Singer* v. *Copper Co.*, 53 Pac. 1028 and cases cited.

We are of the opinion, and so hold, that neither the assignee nor his successor, the receiver, acquired any title to the property in controversy, and that it is subject to plaintiff's judgment lien.

The cause is reversed, with directions to the trial court to enter a decree releasing the property in question from the receivership, and that it be sold to satisfy plaintiff's judgment lien. The costs of this appeal to be taxed against respondents.

BASKIN, J. concurs.

MINER, J. concurs in the judgment.