[Criminal No. 592.    Filed April 20, 1925.]

[235 Pac. 140.]

## VIOLA C. KINGSBURY; Appellant, v. STATE, Respondent.

1. BANKS AND BANKING—STATUTE LIMITING AMOUNT OF LOAN TO PERSON, APPLICABLE TO ALL BANKS, BUT GIVES EXISTING BANKS THREE YEARS TO REDUCE EXISTING LOANS TO COMPLY WITH STATUTE.—Session Laws of 1922, chapter 31, sections 19, 67, limiting the amount a bank may loan to any person, applies to all banks existing or to exist as to new loans, but gives existing banks three years to reduce existing loans to limit provided in section 19.

2. BANKS AND BANKING—WHEN SPECIFIC TRANSACTION WHICH IS SUBJECT OF INDICTMENT AGAINST BANK IS NOT FORBIDDEN, LOSS TO BANK OR CONVERSION OF MONEY MUST BE PLEADED.—When specific transaction which is the subject of an indictment against a bank under Session Laws of 1922, chapter 31, is not forbidden, loss to bank or conversion of money must be pleaded.

3. BANKS AND BANKING—INDICTMENT ATTEMPTIND TO CHARGE WILFUL MISAPPLICATION OF BANK FUNDS BY OFFICER HELD FATALLY DEFECTIVE.—Indictment attempting to charge wilful misapplication of bank funds by accused officer, based on Session Laws of

---

3. See 14 R. C. L. 174.

1922, chapter 31, section 19, alleging an indebtedness incurred by a certain company to the bank in excess of amount limited for loan purposes in section 19, without alleging expressly or impliedly such indebtedness represented borrowed money within section 19, *held* fatally defective within Constitution, article 6, section 22, as failing to allege public offense, in view of two other nonprohibited ways of incurring such indebtedness.

See (1) 7 C. J., p. 712.   (2) 7 C. J., p. 579 (1926 Anno.).   (3) 7 C. J., p. 579 (1926 Anno.).

## ON REHEARING.

(For former opinion, see 27 Ariz. 289, 232 Pac. 887.)

APPEAL from a judgment of the Superior Court of the County of Maricopa.  M. T. Phelps, Judge. Judgment reversed.

Mr. Samuel White and Mr. Robert McMurchie, for Appellant.

Mr. John W. Murphy, Attorney General, and Mr. A. R. Lynch, Mr. Earl Anderson and Mr. E. W. McFarland, Assistant Attorneys General, for the State.

LOCKWOOD, J.—This matter is before the court on a petition for rehearing.  The facts are stated in the previous opinion of the court reported in 27 Ariz. 289, 232 Pac. 887, and need not be repeated here.

Counsel for defendant set up five propositions. The fourth and fifth of these raise questions which were considered on the original presentation of the case, and we see no reason for departing from our views previously expressed thereon.  The third presents anew the main contention in the original argument, to the effect that, on a charge of this kind, it is necessary to both allege and prove a loss to the bank.

It is urged that a holding, that every unauthorized use of the funds of a bank is criminal, would "make a criminal of every bank officer . . . in bestowing gifts upon the poor . . . or supporting a hospital." In view of the alarmingly prevalent attitude of some bank officers, to the effect that the trust funds of a bank are the private property of the officers, to be used for their personal benefit, and at their whim, it might be well if such were the law. We did not, however, so hold. Our ruling was that, when a certain use was positively prohibited by statutory law, it was *ipso facto* a misapplication of the funds of the bank for its officers to permit that use, but we also stated such use would not alone constitute such a crime, but there must also exist an intent on the part of the officers to defraud the bank thereby.

Counsel for defendant express great alarm at the decision of this court to the effect that it is not absolutely and conclusively bound by the decisions of another court construing statutes of its jurisdiction, whose substance we have adopted in Arizona, when such decisions are, in our opinion, not in accord with sound logic or fundamental principles of common sense and justice, and confess their utter inability to assure any citizen of the safety of life, liberty and property under such a rule.

We feel that they are unduly alarmed. The great commonwealths of Wyoming, Texas, Colorado, Michigan, Montana, Utah, Mississippi, Missouri and many others have long held this doctrine, and we have yet to learn that life, liberty and property are more unsafe therein than elsewhere in our country. Nor do we believe that the foundations of society will rock if counsel are compelled, in view of this decision, to advise their clients who may engage in the banking business that, notwithstanding the federal decisions, they may not, with intent to defraud their

respective banks, use trust funds in a manner positively prohibited by law.

We appreciate what counsel state in regard to the importance of the federal decisions, and the rule of taking any statute with the construction placed on it within the jurisdiction from which it came, but we feel it of even greater importance, that when our legislature has passed a law to meet a prevalent evil, a logical construction of that law and one best calculated to remedy that evil should be adopted. We see no reason to recede from the position previously taken on this point.

The other two propositions raise points not before presented by counsel in their brief, or not considered by us in our original decision, and we feel they should be examined carefully.

The first is, that section 19, chapter 31, Session Laws of 1922, was not operative at the time of the alleged offense, by reason of the provision of section 67 of the same act. Section 19 reads in part as follows:

"The total liability to any banking corporation of any person . . . for money borrowed shall at no time exceed twenty-five per cent. of the amount of the capital stock paid in and of the surplus earned and set aside as a surplus fund of such bank."

Section 67 reads:

"Any banking corporation . . . which banking corporation is in existence at the date of the passage of this banking act shall have three years after the provisions of this act shall have become effective, to comply with the provisions of this banking act regarding its loans and investments."

It is argued that the provisions of section 67 permit a bank to make loans to any amount to one person, up to June 30, 1925, provided only that on July 1, 1925, the loans are reduced to 25 per cent of

the capital stock and surplus. In other words, that while the legislature recognized that allowing one person to become indebted to a bank, in excess of 25 per cent of its capital stock and surplus, was an evil so great as to require a law to correct it, yet it deliberately approved of an unlimited increase of future loans for three years, without any apparent reason therefor, and strictly limited such privilege of increase to banks already in existence, while rigidly prohibiting it to newly organized banks.

If, on the other hand, we interpret section 67 to mean that the existing banks—obviously the only kind which could at the time have had loans in excess of 25 per cent—are given three years to bring their present loans down to the limit provided for in section 19, while, so far as new loans are concerned, all banks existing or to exist are governed by section 19, we have a meaning which meets the evil recognized by the legislature, without undue hardship to present debtors, by a violent contraction of existing loans. Such interpretation is equitable, and in accord with common sense, and is adopted by us as the true meaning of the act.

The second point is that the law prohibiting any individual from becoming indebted to a bank in excess of 25 per cent of its capital and surplus applies only to money borrowed, and not to other classes of indebtedness, and, since it is not alleged in the indictment that the indebtedness of the Arizona Cattle Company was for money borrowed, no public offense was stated therein. As we said, this point was not called to our attention until the petition for rehearing, and we therefore—as it now appears unwarrantedly—took it for granted without independent investigation that the pleader had, since his whole case was obviously based on a violation of section 19, *supra,* correctly used the language of that section.

It is apparent, of course, now that our attention is directed to the section, that the inhibition was expressly directed only against an indebtedness "for money borrowed" and not for any other purpose. It is equally clear that while the indictment alleges an indebtedness in excess of 25 per cent of the capital stock and surplus, it nowhere states in terms that the indebtedness was for money borrowed. Does it so state by implication? If the only way in which one could become indebted to a bank were for "money borrowed," it might well be argued the allegation of indebtedness carried with it such implication, but there are at least two other ways in which such indebtedness might readily arise. One is for property purchased from the bank, and the other is on notes and bills discounted.

Under the express provisions of the statute, discounts are excepted from its terms, and an indebtedness for the purchase price of property, not being for money borrowed, is equally without them. If the indebtedness of the Arizona Cattle Company was of either of these last two classes, it was not prohibited by law, and, if the original indebtedness of thirty-five thousand nine hundred ($35,900) dollars was not so prohibited, it was not a violation of section 19, *supra,* to make the loan of twelve thousand dollars ($12,000), which is the subject of the indictment. If the pleader wished to rely upon a violation of section 19, he must have stated specifically that the indebtedness, which he claimed to be in excess of the 25 per cent of the capital and surplus, was for money borrowed, or else have set up facts which would raise that presumption. Not having done so, there is nothing in the indictment which would show that section 19 was violated, nor that the transaction set up therein was prohibited by chapter 31, *supra.*

As we pointed out in our previous decision, when the specific transaction which is the subject of an indictment is not forbidden by law, a loss to the bank or a conversion of the money must be pleaded, and nowhere does this appear in the indictment, either by setting up facts which would show it, or by stating an ultimate conclusion of either law or fact. Nay, the pleader did not even use anywhere therein the bare language of the statute, and allege that defendant did "misapply any of the money, funds, or credits" of the bank. Under any theory or construction of the statute, which we can conceive of after diligent research, the defendant might have committed every act set up in the indictment, and still be guiltless of any violation of law. Such being the case, we are most reluctantly compelled to hold the indictment fails utterly to state a public offense.

In our opinion, offenses involving the care of trust funds, and resulting in the wrecking of banking institutions, are, in some of their aspects, often of even greater gravity than murder. The latter offense is generally committed against one who has, in some way, aroused the animosity of the criminal, and is frequently perpetrated under the influence of sudden emotion, while its after effects involve, at the most, but a few. Those of the former class are always long deliberated and carefully planned, and, in many instances, bring lifelong misery to hundreds and thousands. Such crimes have become alarmingly prevalent throughout our country, and especially in this state, and should be most strictly legislated against, and rigorously punished. For this reason we have followed the doctrine of harmless error, set up in article 6, section 22 of the Constitution, to its uttermost limit, to see if the judgment in this case could be upheld, but there is a limit

beyond which we cannot go, even under that provision.

The indictment does not, on any possible and reasonable construction thereof, state facts which constitute a violation of any law. We have searched the books diligently, and we cannot find a case, in any state or under any Constitution, no matter how liberally the doctrine of harmless error or substantial justice has been construed, where a conviction on an indictment so fatally defective as the one at bar has been upheld. To affirm the judgment under these conditions would amount to a judicial lynching of the defendant, and, no matter how guilty she may be, she is at least entitled to be convicted in accordance with the fundamental principles of our law. This has not been done.

We feel, however, that the matter should not rest in oblivion, as do so many similar cases. We believe it to be the duty of the county attorney of Maricopa county to see that a proper information is immediately filed, and promptly presented to a jury of the county, so that if defendant be guilty she may be legally convicted and punished, and, if innocent, her reputation declared clear of all stain.

The judgment is reversed, and the case remanded to the superior court of Maricopa county for proceedings not inconsistent with this opinion.

McALISTER, C. J., concurs.

ROSS, J.—I concur in the opinion of Mr. Justice LOCKWOOD, and in the very clear and concise way in which he states the law. However, I wish to add this:

The Constitution of this state (sec. 30, art. 2) provides that:

"No person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment."

The fathers wrote a similar provision into the federal Constitution. It is therefore indispensable that the foundational paper or instrument, by whatever name called, be in fact what its name connotes. A piece of paper with a lot of writing on it may be called an indictment or information, but unless it contains a statement of the facts essential to constitute an offense, either at common law or as defined by the statute, it is not an indictment or information; it is nothing more than a piece of paper.

The offense attempted to be charged against appellant is a statutory one. Our law of the offense was taken almost bodily from a congressional act and, before we adopted it, the federal courts had had several occasions to decide what acts constitute the offense, and what acts it was necessary to allege in the indictment. The present indictment it is admitted falls far short of the precedents in the federal courts easily accessible to the prosecution. In our original opinion, we disregarded the contention of appellant that indictment was bad in not alleging a loss to the bank, and reasoned that it was good because it charged (as we mistakenly thought) a loan prohibited by the statute, or if not it described the offense in the language of the statute or in equivalent language. Subsequently, to our amazement and chagrin, we discovered the pleader had not used the language of the statute, nor the equivalent thereof, nor shown that the loan was prohibited by the statute. The nonexistence of the facts we relied upon to uphold the indictment and conviction being manifest, the plain duty to change our opinion to conform to the facts becomes obvious.

The pleader uses some damning phrases in characterizing appellant's acts, as, that they were wilful, unlawful, and felonious, and done with intent to defraud the bank, but he proceeds to specify what appellant did, or helped to do, and all that can be made of it is that she aided or abetted other officers of the bank in making a loan of $12,000 to the Arizona Cattle Company upon the accommodation notes of one Roy B. Jones. There is no allegation that Roy B. Jones was not worth the notes or that the notes were not collectable. The indictment not alleging the existing indebtedness of the Arizona Cattle Company to be borrowed money, it was not criminal to make the additional loan of $12,000 to it, as is clearly shown in the opinion of Mr. Justice LOCKWOOD.

The courts do, especially in recent times, go to great lengths in sustaining convictions. They brush aside as trivial many contentions that in former years were regarded as grounds for reversal. No longer are criminal cases reversed on technical grounds. Errors in trials that do not or cannot prejudicially damage defendant are ignored. When, however, the people in their Constitution say that a thing shall not be done except in a certain way (especially where it involves the life or liberty of the citizen), as, where they say "no person shall be prosecuted criminally in any court of record for felony or misdemeanor otherwise than by information or indictment," a prosecution without information or indictment, or a prosecution on a paper stating no public offense, will be presumed to be prejudicial. If the courts can dispense with an indictment or information, they can dispense with a jury trial and other constitutional rights. The courts are bound by the law in the administration of justice, and when they refuse to accept the law

as their guide they become the agents of anarchy, as much so as the mob that lynches the prisoner. The appellant and her troubles are but a momentary flash upon the canvas of time, but the law, as we declare it, will be of the fabric of our institutions for all time.

It would have been better if the demurrer interposed by the appellant had been sustained by the trial court. The matter could have been immediately submitted to another grand jury or, in the absence of a grand jury, the county attorney could have filed an information. However, the only necessary effect of the error is to delay the trial of appellant upon a sufficient information or indictment. She has not been in jeopardy, neither has she been convicted, as these can happen only upon an indictment or information stating a crime.