STATE, Respondent, vs. BRADFORD, Appellant.

*March 8—April 2, 1935.*

For the appellant there was a brief by *John M. Campbell* and *John B. Fleming,* both of Eau Claire, and oral argument by *Mr. Campbell.*

For the respondent there was a brief by the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Messerschmidt.*

Martin, J. The defendant was informed against and tried on an information containing seven counts, all charging violations of sec. 221.31, Stats. 1929. The court found the

defendant guilty upon the first, second, sixth, and seventh counts charged in the information and not guilty upon the third, fourth, and fifth counts. At all times referred to the defendant was the president and a director of the Augusta State Bank.

The statute for the violation of which defendant was prosecuted and convicted, sec. 221.31, Stats. 1929, provides:

*"Loans to bank officials; penalty.* Every president, director, cashier, officer, teller, clerk or agent of any bank or mutual savings bank who, without authority by resolution of the board of directors previously made and recorded upon its minutes and without one or more indorsers, the responsibility of whom shall have been approved by like previously recorded resolution or in lieu of such indorser or indorsers, collateral security the sufficiency of which shall have been approved by like previously recorded resolution, directly or indirectly borrows or otherwise procures for his use money, funds or property of the bank or mutual savings bank in excess of one thousand dollars in amount or value upon his credit or through use of the credit or accommodation of another person, firm or corporation or by acceptance for discount at said bank or mutual savings bank any note, bond or other evidence of debt which he knows or has reason to know is worth less than the price at which it is accepted as an asset for the bank or mutual savings bank, shall be punished by imprisonment in the state prison not exceeding ten years."

The facts are not in serious dispute. The offense charged in the first count of the information is that on the 26th day of June, 1928, the defendant, as an officer of the bank—president and director—"did without authority by resolution of the board of directors of said bank previously made and recorded upon its minutes, and without an indorser whose responsibility had been approved by like previously recorded resolution, and without collateral security, the sufficiency of which had been approved by like previously recorded resolution, indirectly borrow and procure for his own use and benefit from said bank money in excess of one thousand dollars, to wit, in the sum of thirty-two hundred dollars ($3,200.00)."

As to this transaction, the evidence shows that immediately prior to the 26th day of June, 1928, defendant had overdrawn his account with said bank in the sum of $2,834.78; that on June 26, 1928, a note executed by defendant's wife for the sum of $3,200 was given to said bank, the proceeds of which were credited to defendant's account. The defense as to this count of the information is, first, that the $3,200 was not borrowed from the bank by the defendant. The other defense is that defendant did not procure on said date $3,200 of the bank's funds, the contention being that at said time his account was overdrawn; that he was indebted to the bank at said time because of these overdrafts; and that the giving of the note was not the borrowing of money, except to the extent that it exceeded the overdraft. In other words, it is contended that if out of the proceeds of the $3,200 note there was left to the defendant's credit less than $1,000 after paying his overdraft to the bank, that such transaction would not be a violation of the statute above quoted. The defendant's own testimony disposes of the first contention. He admits that he was in need of money; that he requested his wife to give the note so that he might have the proceeds thereof. No collateral security was given to the bank by his wife. There was no indorsement of the note by anyone. The defendant could not directly borrow and his account with the bank was then overdrawn somewhat in excess of $2,800. The trial court held that the transaction described was a procuring of money and funds of the bank for the use of the defendant by an indirect process. With that holding, we are in full accord.

Now as to defendant's second contention that the borrowing of the $3,200 on his wife's note would not be a violation of the statute unless after paying his overdraft there would be left to his credit a sum in excess of $1,000. In other words, if defendant's contention be the law of this state, whenever any of the officers or employees of the bank mentioned in the statute exhaust their line of credit through the regular and legal channel of borrowing, all they need do is issue checks

against an empty bank account and thereby procure an unlimited amount of money from the bank, and thus evade their credit limit and all the safety provisions which the statute requires relative to such loans. The language of the statute is,

". . . directly or indirectly borrows *or otherwise procures for his use* money, funds or property of the bank. . . ."

It appears that the defendant had two accounts with the bank, one designated "Interest Account" the other "Personal Checking Account." On June 26, 1928, at the time the $3,200 loan was procured for the use and benefit of the defendant through the means of his wife's note, there was an overdraft in his so-called "Interest Account" in the sum of $2,834.78. His "Personal Checking Account" had a balance of $822.72. This would leave the defendant's net overdraft on that date $2,012.06, so that after discharging the overdraft defendant had for his own use out of the proceeds of the $3,200 note the sum of $1,187.94. On the admitted facts and evidence relative to the first count of the information, we must sustain the conviction.

As to the second count, this same $3,200 note is involved. It became due on September 28, 1928, and was renewed on that day, including an additional loan of $600, in all, $3,800. The $600 additional loan was a new loan. While the $3,800 note was charged up as the liability of the defendant's wife, this additional $600 was credited to the defendant's account. This $600 added to the amount which defendant had theretofore borrowed from the bank, excluding the $3,200 evidenced by the note of his wife, exceeded a thousand dollars and the requirements of the statute with reference to such borrowing had not been complied with. The evidence relative to this transaction sustains the conviction.

The sixth count charges that on June 11, 1930, the defendant, without the authority of any resolution of the board of directors previously made and recorded, without any indorsement, and without any collateral security, obtained money of

the bank for his own use to the amount of $1,500. The facts here involved are admitted. The defendant was in need of money. He went to Mr. M. P. Cannon to procure a loan. Mr. Cannon said he had no money to loan. Defendant then suggested that he, Mr. Cannon, borrow the money at the Augusta State Bank and loan it to the defendant. This was done. The loan was not made for the benefit and use of Mr. Cannon, but solely for the use and benefit of the defendant and defendant received the proceeds of said loan. There was no indorser of the note; there was no collateral given to the bank; and there was no authorization of the board of directors as the statute requires.

The evidence shows that on this date the defendant's "Interest Account" was overdrawn $523.74 and his "Personal Checking Account" had a credit of $67.42, leaving his net overdraft at said time the sum of $456.32. Crediting defendant's account with the $1,500 obtained on the Cannon note after discharging the overdraft, defendant would still owe the bank in excess of $1,000.

The seventh count charges a similar transaction. The facts are admitted. Defendant was in need of money for his own use and benefit. He went to his father-in-law, Mr. A. G. Cox, and between them it was arranged that Mr. Cox would give his note to the bank for $4,000. Said sum was loaned on the father-in-law's note and immediately turned over to the defendant and used by him for his own purposes. Defendant thus procured indirectly this $4,000 of the bank's money for his own use and benefit without going through the authorization as required by the statute and without indorsement or security for the loan.

On this date, December 30, 1930, defendant's "Interest Account" and his "Personal Checking Account" were overdrawn $3,438.07. While the difference between the overdraft and the amount borrowed on said day is less than $1,000, that is, defendant did not on said day procure new money or credit

from the bank in excess of $1,000, there was no authorization by resolution of the board of directors recorded in their minutes for these overdrafts; there was no collateral given; these overdrafts, together with the amount received at the time the $4,000 was credited to the defendant's account, would amount to $4,000. The defendant thus procured, without complying with the statute, the sum of $4,000, not all on the same date, but all put together on December 30, 1930, the amount was far in excess of $1,000.

The statute prohibits bank officials and other persons to whom the statute refers from borrowing for their own use money, funds, or property of the bank in excess of $1,000 in amount or value through the use of the credit or accommodation of another person unless the requirements of the statute are complied with. On the testimony of the defendant the transactions involved in the sixth and seventh counts of the information clearly establish the defendant's guilt of the offense as charged in said counts. It is urged by defendant's counsel that, under the statute as was provided at the time specified in the several counts of the information, each borrowing must exceed the sum of $1,000 in order to violate the statute. Such interpretation would render worthless the safeguards and protection which the statute was designed to give. When the sum total of the moneys borrowed from the bank by any of the persons referred to in the statute for their own use and benefit, in their name or through the use of the credit or accommodation of another person, exceeds $1,000, there occurs immediately a violation of the statute unless the several safeguards as required by the statute are first complied with, and this applies to an overdraft which is but another method of procuring for his use funds of the bank.

*By the Court.*—Judgment affirmed.