Reid S. Houle, J.
Plaintiff, claiming it lost $28,881.21 through a check kiting scheme, now seeks indemnity for the loss under a bankers blanket bond issued by the defendant.
The defendant claims that the loss is not covered by its bond.
The case was tried by the court without a jury on November 12,13 and 14,1968.
Norfolk Homes Inc. and Guerney Kranz Inc. were corporations owned by common interests. Norfolk Homes Inc. had a checking account at Liberty and Guerney Kranz Inc. had a checking account at the Bank of Buffalo. Checks drawn on the Guerney Kranz Inc. account were deposited to the Norfolk Homes Inc. account and vice versa. At the time the checks were drawn and deposited there were not sufficient funds in the accounts on which they were drawn to cover them. The purpose of this was to allow these corporations to operate on the banks’ money. In other words, one bad check was covered with another. For a time both Liberty and the Bank of Buffalo were honoring checks drawn against these deposits before the funds represented by the deposits were collected. The scheme came to light when the Bank of Buffalo refused payment on, and returned to Liberty a check for $15,000 which had been drawn on the Guerney Kranz Inc. account and deposited in the Norfolk Homes Inc. account. As a result, of honoring checks drawn against uncollected funds, Liberty lost $28,881.21. The amount is not in dispute, the only issue being coverage.
The pertinent parts of the bond are as follows:
11 THE LOSSES COVERED BY THIS BOND ARE AS FOLLOWS:
* * #
ON PREMISES
“(B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, false pretenses * * *
while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere ”.
*445 DEFINITION OF PROPERTY
“ Wherever used in this Bond Property shall be deemed to mean money, currency, coin, bank notes, Federal Reserve notes, postage and revenue stamps, IT. S. Savings Stamps, bullion, precious metals of all kinds and in any form and articles made therefrom, jewelry, watches, necklaces, bracelets, gems, precious and semi-precious stones, bonds, securities, evidences of debts, debentures, scrip, certificates, receipts, warrants, rights, transfers, coupons, drafts, bills of exchange, acceptances, notes, checks, withdrawal orders, money orders, travelers’ letters of credit, bills of lading, abstracts of title, insurance policies, deeds, mortgages upon real estate and/or upon chattels and upon interests therein, and assignments of such policies, mortgages and instruments, and other valuable papers and documents, and all other instruments similar to or in the nature of the foregoing, in which the insured has an interest or which are held by the insured for any purpose or in any capacity and whether so held gratuitously or not and whether or not the insured is liable therefor, and chattels which are not hereinbefore enumerated and for which the insured is legally liable.”
EXCLUSIONS
“ Section 1. This bond does not cover:
* * #
‘ ‘ (d) Any loss, the result of the complete or partial non-payment of or default upon any loan made by or obtained from the Insured, whether procured in good faith or through trick, artifice, fraud or false pretenses ”.
Defendant claims that no tangible property was lost, that the loss was not sustained through false pretenses, and that the loss was the result of a loan.
Defendant claims the bond contemplates only loss of tangible personal property because of the list of such items under the definition of property in the bond. It claims that the bank extended credit and was not paid back, but that no tangible object was lost. While the definition does contain a long list of tangible property there is no need to go past the first word in the list which is, “ money ”. The bank lost over $28,000 and this is money and within the definition of 11 property ’ ’ in the bond. In St. Lawrence County Nat. Bank v. American Motorists Ins. Co. (21A D 2d 702) a somewhat similar loss through a check forging scheme was held to be a loss of property under the same type of bond.
Defendant contends that there were no false pretenses, because, when the checks were deposited to the Norfolk Homes *446 Inc. account there was no representation that the checks would be paid by the bank on which drawn but at most a promise that if the checks were not honored they would be paid by Norfolk Homes Inc. However, it is clear that, when the checks were drawn and deposited, both the drawer and the payee knew that there were not sufficient funds to cover them and that this was done to obtain the use of the bank’s money. Of course, Liberty would not have honored checks drawn against these deposits if it had known there were insufficient funds to cover them. Such a scheme or device would constitute a larceny by false pretenses under section 1290 of the then Penal Law and a larceny under section 1292-a of the then Penal Law and accordingly is covered by the bond.
It is defendant’s contention that an overdraft is a loan. It introduced evidence that, in certain bank reports, overdrafts are listed with loans. Further, it cited several cases in which overdrafts had been called loans. However, none of these cases was construing a provision of a bond such as we have here. The question is what does the word loan mean in the present context. In Johnstown Bank v. American Sur. Co. (6 A D 2d 4, 7) the court in construing a similar bond held that a conditional sales contract was not a loan because it“ lacked the essential elements of a loan as that term is ordinarily understood ’ ’. However, the court did state that if there had been proof of a universal or general bank custom to classify conditional sales contracts as loans their decision might have been different. There was no such proof in this case as to overdrafts. The fact that overdrafts are listed on certain reports with loans does not in fact make them loans. A loan is defined in Webster’s New Twentieth Century Dictionary (1964) as “ anything furnished for temporary use to a person at his request, on the condition that it shall be returned, or its equivalent in kind, with or without a compensation for its use ’ ’.
An overdraft is defined as: “ the act of drawing out by check or draft a sum of money exceeding the amount to one’s credit ”. The basic similarity between a loan and an overdraft is that in each instance a debt is created. However, in Brigham v. McCabe (20 N Y 2d 525, 530) it was pointed out that the fact that a transaction created the relationship of debtor and creditor did not make the transaction a loan.
Based on the foregoing the court holds that the plaintiff lost money through larceny by false pretenses and that such loss was not the result of a loan.
The same result has been reached in cases outside of New York based on almost identical fact situations. (Hartford Acc. & Ind. *447 Co. v. Federal Deposit Ins. Corp., 204 F. 2d 933; Fidelity & Cas. Co. of N. Y. v. Bank of Altenburg, 216 F. 2d 294.)
The plaintiff lost $28,881.21. However, there is a $500 deductible clause in the bond and accordingly the plaintiff is entitled to a judgment of $28,381.21.