481 P.2d 889

**STATE of Arizona ex rel. Franklin J. STOWELL, Superintendent of Banks, Appellant,**

v.

**Edward H. LITTRELL and First American National Bank, formerly known as First American Bank, Appellees.**

**No. 1 CA–CIV 1388.**

Court of Appeals of Arizona, Division 1.

March 4, 1971.

Gary K. Nelson, Atty. Gen., by Nicholas C. Gutilla, Asst. Atty. Gen., Phoenix, for appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Wilbert G. Anderson, Phoenix, for appellees.

HOWARD, Judge.

The Superintendent of Banks instituted an action against the appellees for the forfeiture provided in A.R.S. § 6–250, subsec. D. The complaint alleged in substance that while Littrell was an active salaried officer and director of the bank, he knowingly caused overdrafts in the total sum of $851.32 to occur to his checking account with the bank and that they knowingly honored and paid these overdrafts without complying with the mandates of A.R.S. § 6–250, requiring forfeiture to the state of the amount of the overdraft.

The appellees filed a motion to dismiss on the ground that the complaint failed to state a claim against them upon which relief could be granted. Their position was that overdrafts do not constitute loans within the purview of A.R.S. § 6–250. The trial court, in granting appellees' motion to dismiss, agreed with their position stating in its memorandum opinion the following reasons:

"1. The statute in question (Section 6–250 A.R.S.) seems to cover and to contemplate loan transactions from the bank to one of its officers under the following situations and requirements:

a) A bank officer makes an application to his bank for a loan.

b) The request for a loan by the official shall be considered by the board of directors of the bank.

c) If a favorable decision is made to grant the loan, a majority of the directors of the bank are required to indicate their approval by a vote; and if the official (borrower) is a board member, he is not entitled to participate in the vote.

d) The approval of the loan by a majority of the board of directors shall be in writing and a copy thereof forwarded to the Superintendent of Banks.

e) The bank official borrowing the money shall furnish to the bank security for the loan in twice the amount of the loan.

2. The court is of the opinion that the honoring of overdrafts in a checking account does not fall within the contemplation of Section 6–250 A.R.S. requiring forfeiture to the State even though an overdraft is in the nature of a loan or an extension of credit to the depositor.

3. An overdraft is not a conventional or commercial loan which the Court believes are the types of loans contemplated by Section 6–250 and, additionally, this conclusion is supported by the fact that Section 6–371 et seq. A.R.S. defines and enumerates 'check loans', thus indicating that the legislature has deemed it necessary specifically to designate and provide procedures for check loans; check loans are more in the nature of an overdraft than a formal commercial loan.

4. This specific legislation on check loans negates the intention of the legislature to cover check loans or overdrafts under Section 6–250; furthermore, the legislature has made it a misdemeanor for a savings bank officer to overdraw his account (6–326 A.R.S.)."

It is the Superintendent's position that an overdraft constitutes a loan within the contemplation of A.R.S. § 6–250 which provides:

"A. An officer or director of a bank shall not borrow or use, directly or indirectly, money or other property from the bank to exceed ten percent of its capital stock and surplus, and the stock of the corporation shall not be taken as security for a loan.

B. A bank shall not lend any of its funds to its officers or directors unless he furnishes security in twice the amount of the funds loaned. A loan shall not be made to an officer or director of the bank without the approval of a majority of the other members of the board of directors and the officer or director receiving the loan shall not participate in the vote. The total amount lent to all active salaried officers or directors of a bank shall not exceed twenty-five percent of the capital and surplus of the bank.

C. Where a loan is made to an active salaried officer or director it shall first be approved by a majority of the board of directors. The approval shall be in writing, and a copy thereof shall be immediately forwarded to the superintendent of banks. The approval shall be signed by each person voting and shall show that they constitute a majority of the board of directors, not including the officer or director receiving the loan, that the loan is not more than ten percent of the capital and surplus of the bank, and that the loan will not make the aggregate of loans to active salaried officers or diirectors more than twenty-five percent of the capital and surplus of the bank.

D. Every bank or officer thereof knowingly violating the provisions of this section shall for each offense forfeit to the state the amount lent.

E. The office of a person violating this section shall thereupon become vacant and the loan shall immediately become due and payable.

F. A director or officer of a bank may relieve himself from the liability or responsibility imposed by this section by dissenting from the action giving rise to the liability or responsibility and having his dissent entered in the minutes of the meeting at which the action is taken."

The controlling question is—what was the legislative intent in enacting the foregoing statute? In other words, does the statutory prohibition against lending of bank funds to its officers or directors without compliance with the statutorily-prescribed requisites, contemplate overdrafts?

We have been unable to find any cases directly on point. Some courts, in passing upon the question of whether an overdraft is a "loan" so as to preclude recovery under a bond not covering losses from loans, have held that overdrafts are not "loans." See Indemnity Insurance Company of North America v. Pioneer Valley Savings Bank, 343 F.2d 634 (8th Cir. 1965); United States for Use of First Continental Nat.

Bank & Trust Co. v. Western Contracting Corporation, 341 F.2d 383 (8th Cir. 1965); Hartford Accident and Indemnity Company v. Federal Deposit Insurance Corporation, 204 F.2d 933 (8th Cir. 1953); Liberty National Bank and Trust Company v. Travelers Indemnity Company, 58 Misc.2d 443, 295 N.Y.S.2d 983 (1968). In the Liberty National Bank and Trust Company case, supra, the court pointed out that there is a basic similarity between a loan and an overdraft in that a debt is created. The court held, however, that the fact a transaction creates a debtor-creditor relationship does not make it a loan. In Browning v. State, 101 Fla. 1051, 133 So. 847 (1931), a criminal prosecution, and in State ex rel. Hundley v. Jay, 104 Ind.App. 259, 10 N.E.2d 737 (1937), a suit to collect from a surety for a cashier's breach of a fidelity bond, it was held that an overdraft is not a loan within the meaning of a statute prohibiting a loan to bank officers in excess of a certain percentage of the aggregate of capital stock and surplus.

Appellees rely on Kingsbury v. State, 27 Ariz. 289, 232 P. 887 (1925), rehearing 28 Ariz. 86, 235 P. 140 (1925), and the interpretation of the statute involved therein found in the case of United States v. Wigenhorn, 312 F.2d 289, 292 (9th Cir. 1963). Such reliance is misplaced. The precursors of A.R.S. § 6–250 and § 6–251 were not involved in these cases, but rather the forerunner of A.R.S. § 6–272, an entirely different statute.

In the context of whether a bank has a right to reimbursement for the amount of an overdraft, courts take the view that an overdraft "amounts to" or is "in the nature of" a loan. Federal Deposit Insurance Corporation v. Ciaffoni, 176 Pa.Super. 91, 107 A.2d 211 (1954); Bromberg v. Bank of America National Trust and Savings Association, 58 Cal.App.2d 1, 135 P.2d 689 (1943); 10 Am.Jur.2d Banks § 655; 9 C.J.S. Banks and Banking § 353b; Annot. 12 A.L.R. 360.

We have found only two cases which have held that an overdraft constitutes a loan within the purview of a statute analogous to our A.R.S. § 6–250. See State v. Bradford, 218 Wis. 68, 260 N.W. 248 (1935); Cupit v. Park City Bank, 20 Utah 292, 58 P. 839 (1899). As stated in the *Cupit* case:

"'* * * To permit officers of a banking corporation who are intrusted with the power to loan at will the moneys deposited by the public for safe-keeping to themselves is to open wide the doors to fraud and embezzlement.' And the experience of the past has shown that whenever the officers of a banking institution take advantage—which is too often the case—of the opportunities thus afforded them to use without restriction, for their own private uses, the funds intrusted to their care, it almost invariably results in the wreck and ruin of the institution itself. The legislature, in order to guard against such disastrous results, and to create confidence in and give stability to our banking system, has, by the enactment of the foregoing statute, undertaken to control and regulate the question." 58 P. at 841.

In State v. Bradford, supra, the evidence showed that prior to June 26, 1928, the defendant bank director had overdrawn his account with the bank in the sum of $2,834.78; that on June 26, 1928, a note executed by his wife for the sum of $3,200.00 was given to the bank, the proceeds of which were credited to the defendant's account. The defendant contended that he did not thereby procure $3,200.00 of the bank's funds since at that time his account was overdrawn, he was indebted to the bank because of his overdrafts and that the giving of the note was not the borrowing of money except to the extent that it exceeded the overdrafts. In other words, it was his position that out of the proceeds of the $3,200.00 note there was left to his credit less than $1,000.00 after paying his overdrafts to the bank and therefore the transaction was not violative of the statute prohibiting loans in excess of $1,000.00. The

Wisconsin court disposed of this contention in the following words:

> "Now as to defendant's second contention that the borrowing of the $3,200 on his wife's note would not be a violation of the statute unless after paying his overdraft there would be left to his credit a sum in excess of $1,000. *In other words, if defendant's contention be the law of this state, whenever any of the officers or employees of the bank mentioned in the statute exhaust their line of credit through the regular and legal channel of borrowing, all they need do is issue checks against an empty bank account and thereby procure an unlimited amount of money from the bank and thus evade their credit limit and all the safety provisions which the statute requires relative to such loans.* The language of the statute is ' * * * directly or indirectly borrows or otherwise procures for his use money, funds or property of the bank. * * *' " 260 N.W. at 249. (Emphasis added)

It is fundamental that, in construing a statute, the judicial function is to attempt to ascertain the true intent of the legislature at the time it enacted the statute. Sloatman v. Gibbons, 104 Ariz. 429, 454 P.2d 574 (1969); Bushnell v. Superior Court, 102 Ariz. 309, 428 P.2d 987 (1967). Although as a general rule, statutory provisions limiting loans to officers and directors and providing for civil and penal liability are to be strictly construed, 9 C.J.S. Banks and Banking § 386; 10 Am.Jur.2d Banks § 240, the "strict construction" rule should not be applied so as to defeat the obvious intention of the legislature. State v. Haesemeyer, 248 Iowa 154, 79 N.W.2d 755 (1956).

Because of the number of bank failures due to overborrowing of bank funds by officers, directors, or stockholders, statutes like our A.R.S. § 6–250 were enacted to remedy this situation—they were intended to protect the general public who make banks the depository of their funds. 10 Am.Jur.2d Banks § 239; State v. Lindberg, 125 Wash. 51, 215 P. 41 (1923). The Supreme Court of this state, in discussing predecessor regulatory statutes relative to bank loans, has commented on the "alarmingly prevalent attitude of some bank officers, to the effect that the trust funds of a bank are the private property of the officers, to be used for their personal benefit, and at their whim, * * *." In Kingsbury v. State, on rehearing, 28 Ariz. 86, 88, 235 P. 140, 141 (1925). The court stated:

> " * * * but we feel it of even greater importance, that when our Legislature has passed a law to meet a prevalent evil, a logical construction of that law and one best calculated to remedy that evil should be adopted." 28 Ariz. at 89, 235 P. at 141.

We agree with the appellant that the obvious purpose of A.R.S. § 6–250 is to protect a bank and its depositors against the possible ravages of internal assault upon its funds. Subsection A prohibits borrowing, *directly or indirectly*. Subsections B and C delineate the conditions, procedure and limitations on loans to bank officers or directors. Reading the statute as a whole with due regard given to the general purpose of its enactment, we conclude that it was leveled at indirection as well as at direction. If extensions of credit in the form of honoring overdrafts are not considered "loans" within the purview of the statute, then the very evil which the statute was designed to prevent, i. e., overborrowing of bank funds by its officers, would be fostered and the statutory purpose thereby thwarted. The remedial purpose of A.R.S. § 6–250 mandates a holding that it is applicable to overdrafts. We fail to see any distinction between lending credit or lending funds of the bank.[1]

---

[1.] We do not conceive that those in banking circles would think otherwise. It is interesting to note that in the Federal Reserve System an overdraft falls within the category of a loan. In the section of the Federal Reserve Act captioned "Loans to Executive Officers," 12 U.S.C.A. 375a, we find:

> "(1) Except as authorized under the section, no member bank may extend

We are not impressed with the argument that A.R.S. § 6–326 which makes it a misdemeanor for an officer, agent, teller or clerk of a *savings bank* who knowingly overdraws his account with such bank, thereby wrongfully obtaining money, evidences a contrary legislative intent. It indicates nothing more than an intent to impose more severe sanctions where savings banks are involved. Nor are we impressed with the argument that the 1961 enactment of Article 10, consisting of Sections 6–371 to 6–380, inclusive, relative to "check loans" requires a contrary conclusion. If anything, as we read the 1961 enactment, it is a limitation of a bank's authority to make such loans and is clearly limited to situations where a written check loan agreement between the bank and the borrower has been executed. A.R.S. § 6–372.

At oral argument the appellees observed that a ruling contrary to their position would be unduly harsh and contrary to human experience since an officer of a bank who miscomputes his bank balance could be held to forfeit his office for a mere $5.00 overdraft. At first blush this argument would appear to have merit. At second blush the merit of the argument disappears, since A.R.S. § 6–250 requires the acts to be done *knowingly*, thus excusing the innocent miscalculation of one's bank balance.

Appellee Littrell further argues that an interpretation of the statute imposing liability on him in order to protect the depositors is not necessary since the officers are insured and thus protection is amply afforded by insurance funds. This is an interesting bit of sophistry. We fail to see the nexus between unlawful misconduct and insurance, nor do we believe that bank officers who are willing to unlawfully use the funds of the depositors should remain in a position to perhaps repeat their feat on a larger scale. We believe that a construction of the statute contrary to appellees' position will go far to discourage those officers who are willing to take such a risk.

Appellees, rather belatedly and apparently for purposes of defending the trial court's ruling, insist that the Superintendent has misconceived his remedy in that a criminal prosecution should have been instituted rather than this proceeding pursuant to A.R.S. § 6–250. Suffice it to say that the term "forfeiture" may be used with relation either to punishment for violation of laws which are penal in character and enforceable by the state, or with relation to violations of law or duty, civil and remedial in character, for the recovery of a sum of money in a civil action. Arthur v. Trindel, 168 Neb. 429, 96 N.W.2d 208 (1969); Annot. 71 A.L.R.2d 990 § 1. The penalties imposed for violation of A.R.S. § 6–250 as set forth in subsections D and E thereof, may be imposed in a civil proceeding. State ex rel. Smith v. Bohannan, 101 Ariz. 520, 421 P.2d 877 (1966); Frazier v. Terrill, 65 Ariz. 131, 175 P.2d 438 (1946).

In testing the propriety of ruling on a motion to dismiss a complaint for failure to state a claim for relief, we must accept the well-pleaded facts of the complaint as true. Kalmanoff v. Weitz, 8 Ariz.App. 171, 444 P.2d 728 (1968). Since the trial court

credit in any manner to any of its own executive officers. No executive officer of any member bank may become indebted to that member bank except by means of an extension of credit which the bank is authorized to make under this section. * * *

* * * * *

(10) The Board of Governors of the Federal Reserve System may prescribe such rules and regulations, including definitions of terms, as it deems necessary to effectuate the purposes and to prevent evasions of this section."

Regulation O, prescribed by the Board of Governors, as amended, effective March 15, 1968, 12 C.F.R. 215, provides in pertinent part:
"Section 215.2—Definitions.

* * * * *

(C) 'Extension of credit' and 'extend credit'. The terms 'extension of credit' and 'extend credit' mean the making of a loan or the extending of credit in any manner whatsoever, and include:
(1) Any advance by means of an overdraft, cash item, or otherwise; * * * "

erred in its conclusion that an overdraft was not a loan within the purview of A.R.S. § 6–250, the motion to dismiss was improperly granted.

Judgment reversed with directions to reinstate the complaint.

KRUCKER, C. J., and HATHAWAY, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.