ELIAS G. NAAME, PLAINTIFF, v.
JOSEPH F. BRADWAY, JR., DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided July 28, 1978.

Mr. Elias G. Naame, plaintiff, *pro se*, and *Mr. Robert H. Davisson*, attorney for plaintiff.

*Ms. Lee Hilles Wertheim* for defendant (*Messrs. Lowenstein, Sandler, Brochin, Kohl & Fisher*, attorneys).

*Mr. Michael E. Goldman*, Deputy Attorney General for the Department of Banking of New Jersey (*Mr. William F. Hyland*, Attorney General, attorney).

GRUCCIO, J. S. C. Defendant Joseph F. Bradway, Jr. is president and chairman of the board of directors of Guarantee Bank, a banking corporation of the State of New Jersey (hereinafter, the bank.) Plaintiff is a stockholder and director of the bank.

On or about July 22, 1977 plaintiff filed a complaint alleging violations of various provisions of the Banking Act of 1948, *N. J. S. A.* 17:9A–1 *et seq.* The complaint alleges that by virtue of making overdrafts on accounts maintained by him with the bank, defendant defaulted in an undisputed obligation to the bank in the years of 1974, 1975 and 1976, thereby violating *N. J. S. A.* 17:9A–104, which provides that a director "who defaults for thirty days in payment of an undisputed obligation to the bank, shall cease to be a director."

Plaintiff filed the present action seeking to permanently remove defendant from the board for violations of the statute.

On November 18, 1974 a routine audit of the bank by the FDIC and the Banking Department of New Jersey revealed overdrafts in various checking accounts of Bradway. The principal of the overdrafts was, admittedly, voluntarily paid in full shortly after Bradway was notified of them; however, they had remained on the books in excess of 30 days, in violation of the statute.

On December 24, 1974, at a meeting of the full board of directors of the bank, the chairman of the board announced that Bradway had been disqualified as a director by virtue of the provisions of *N. J. S. A.* 17:9A–104 and that a vacancy therefor existed on the board. Bradway had made full disclosure to the board concerning the overdrafts. He had further voluntarily repaid both principal and interest on the amount of the overdrafts. The shareholders of the bank were on notice of the fact of Bradway's overdrafts due to the large amount of publicity engendered by the situation. By a unanimous vote of the board, Bradway was re-elected as a director to fill the vacancy. During the years 1974–1976 further overdrafts were made by Bradway on various accounts maintained by himself and members of his immediate family. In July 1977 plaintiff filed the present action seeking a mandatory injunction permanently removing defendant from the board of directors of the bank, and a declaratory judgment that defendant is ineligible to hold the office of direc-

tor or officer of the Guarantee Bank. After commencement of the suit Bradway requested the firm of Haskins & Sells, certified public accountants, to compute the interest which might be applicable for the six checking accounts at Guarantee Bank on all of the overdrafts occurring between 1973 and 1976. Based on the highest interest charges that might be applicable, the accountants computed the amount which would be due if interest were chargeable on overdrafts. Bradway voluntarily paid this amount.

During the years 1975 to 1978 Bradway was re-elected to the board at the shareholders meeting held in April of each year. In April 1978 Bradway had repaid all of the overdrafts in his checking accounts and was re-elected by shareholders, who had knowledge of the overdrafts due to the filing of the present law suit and the attendant publicity.

At the conclusion of argument on the motion to dismiss for failure to state a claim upon which relief can be granted, I requested additional memoranda searching out similar statutory or case law from other jurisdictions which would aid in interpreting *N. J. S. A.* 17:9A–104, due to the absence of any history on the statute in New Jersey.

From a review of the cases cited, I have no doubt but that *N. J. S. A.* 17:9A–104 is self-executing, not requiring any action on the part of the Banking Commissioner. As a corollary to this, plaintiff has the right to privately enforce the provisions of the statute. This is an effective supplement to the supervisory function of the Banking Commissioner, particularly in light of the fact that the Banking Commissioner has declined to act. Plaintiff is a stockholder of the bank, and therefore certainly has a right to protect his holdings. This does not imply an encroachment upon the administrative sphere. There is a strong policy of maintaining harmonious relationships between administrative and judicial bodies. This was recently affirmed in *Brunetti v. New Milford,* 68 *N. J.* 576 (1975):

This Court has recognized that the exhaustion of remedies requirement is a rule of practice designed to allow administrative bodies

to perform their statutory functions in an orderly manner without preliminary interference from the courts * * * Therefore while it is neither a jurisdictional nor an absolute requirement, *there is none-theless a strong presumption favoring the requirement of exhaustion of remedies.* [at 588]

I have no doubt that the better part of judicial wisdom is restraint. In the instant case I have simply accepted the courts' secondary jurisdiction in light of the fact that the Acting Commissioner of Banking had full knowledge of Bradway's overdrafts.

Defendant does not dispute the fact that the overdrafts in question constitute obligations to the bank within the intendment of the statute, therefore automatically causing his disqualification as a director. *State ex rel. Stowell v. Littrell,* 14 *Ariz. App.* 203, 481 *P. 2d* 889 (App. Ct. 1971). The issue to be decided is whether such disqualification was cured by Bradway's subsequent re-election, or must remain a permanent bar to his acting on the board of directors. My decision is that the former contention is true; disqualification was designed to be temporary, and could be cured by the repayment of the overdraft and re-election to the Board after full disclosure to both the board of directors and the stockholders of the bank. The lack of New Jersey authority leads me to accept the holding of *Cupit v. Park City Bank,* 20 *Utah* 292, 48 *P.* 839 (Sup. Ct. 1899), which construed a Utah statute similar to New Jersey's to the effect that the disability was temporary.

 Where the Legislature has failed to act, a court of equity may clarify statutory ambiguities. *Dvorkin v. Dover Tp.,* 29 *N. J.* 303 (1959).

A return to the first principles of statutory interpretation teaches that when the lawgiver's intent is in doubt, the court "ought to interpret the law to be what is most consonant to equity and least inconvenient." *Kerlin's Lessee v. Bull,* 1 *Dall.* 175, 1 *U. S.* 175, 1 *L. Ed.* 88 (1786); *Associates of Jersey Company v. Davison,* 29 *N. J. L.* 415, 424 (E. & A. 1860). This is the doctrine of "equity of the statute" which found expression in *Eyslon v. Sludd,*

2 *Plowd.* 459A, 75 *Eng.* Rep. (1574), and from which flows the constitutional aid that has taken firm roots in our jurisprudence — that the spirit of the legislative direction prevails over its terms. See *Horack, Sutherland Statutory Construction* (3d ed. 1943), §§ 6001 to 6007; *McCaffrey, Statutory Construction*, § 4, p. 8 (1953)

We might add that the "equity of the statute" rule does not, when properly applied, substitute the judicial for the legislative will, but rather in the consideration of all the material elements reaches the result probably intended by the draftsman had he anticipated the situation at hand. Indeed, to hold otherwise in the absence of considerations clearly requiring such a contrary construction, is to claim for the judiciary a monopoly on the ability to perceive the justice of a cause. [at 315]

▮ I am further convinced by a comparison of *N. J. S. A.* 17:9A–104 and *N. J. S. A.* 17:9A–18.1, the latter of which imposes *permanent* disqualification for conduct involving moral turpitude. Had the legislature intended to impose an equally harsh penalty for conduct such as Bradway's, it could have done so. There is nothing in the language of the statute to indicate that this was desired. I therefore hold that *N. J. S. A.* 17:9A–104 caused an immediate, temporary disqualification of defendant which was cured by repayment of the overdrafts and re-election to the board of directors of the Guarantee Bank after full disclosure to the shareholders and members of the board.

During the years of 1974 to April 1978, Bradway was a *de facto* director of the Guarantee Bank, rather than a *de jure* director due to the continuing overdrafts on his checking accounts. The re-election to the board in 1978 cured the earlier defects.

The extent of the court's decision is limited to the force and effect of *N. J. S. A.* 17:9A–104.